# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Becky Berscheid, | Case No. 0:22-cv-00086-JRT-LIB |
| Plaintiff | |
| vs. | **FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL** |
| Midland Credit Management, Inc., TransUnion, LLC, and Experian Information Solutions, Inc., | |
| Defendants. | |

PLAINTIFF, as and for her causes of action (i.e., violations of the Fair Credit Reporting Act and Fair Debt Collection Practices Act) against the above-named defendants (collectively referred to as "Defendants"), states and alleges as follows:

### Introduction

1. The following case alleges violations of the Fair Debt Collection Practices Act ("FDCPA") and the Fair Credit Reporting Act ("FCRA").

2. Defendant Midland Credit Management, Inc. ("Midland") sued Plaintiff in state conciliation court for a credit account it allegedly purchased. The judge in conciliation court found that Midland failed to meet its burden to prove that it owned the account, and the judge dismissed Midland's claim with prejudice. Notwithstanding this result, Midland continued to furnish the nationwide credit

1

bureaus that Plaintiff still owed Midland money. Plaintiff sent a dispute to Defendants TransUnion, LLC ("TransUnion") and Experian Information Solutions, Inc. ("Experian") in order to correct the Midland tradeline. Instead, Defendants did nothing other than verify Midland's information. Consequently, Plaintiff brings this action.

## The Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.*

3. The United States Congress has found the banking system is dependent upon fair and accurate credit reporting.

4. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system.

5. Congress enacted the FCRA, 15 U.S.C. § 1681 *et seq.*, to ensure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy.

6. The FCRA seeks to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other information on consumers.

7. The FCRA also imposes duties on the sources that provide credit information to credit reporting agencies, called "furnishers."

8. The FCRA protects consumers through a tightly wound set of procedural protections from the material risk of harms that otherwise flow from inaccurate reporting.

9. Thus, through the FCRA, Congress struck a balance between the credit industry's desire to base credit decisions on accurate information, and consumers' substantive right to protection from damage to reputation, shame, mortification, and the emotional distress that naturally follows from inaccurate reporting of a consumer's fidelity to his or her financial obligations.

### The Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*

10. The United States Congress has found abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors, and has determined that abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy.

11. Congress wrote the FDCPA, 15 U.S.C. § 1692 *et seq.*, to eliminate abusive debt collection practices by debt collectors, to ensure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.

12. If a violation occurs, "the FDCPA is a strict liability statute that makes debt collectors liable for violations that are not knowing or intentional." *Donahue v. Quick Collect, Inc.*, 592 F.3d 1027, 1030 (9th Cir. 2010).

3

13. Even a single violation of the FDCPA is sufficient to support liability. *Taylor v. Perrin, Landry, deLaunay, & Durand*, 103 F.3d 1232, 1238 (5th Cir. 1997).

14. All alleged FDCPA violations herein are material violations of the FDCPA as these violations would limit the ability of a hypothetical least sophisticated consumer and/or unsophisticated consumer to make an intelligent choice as to the alleged debt and actions that should be taken as to the alleged debt.

## Statement of Jurisdiction

15. This Court has Jurisdiction over the subject matter of this action pursuant to 28 U.S.C § 1331, 15 U.S.C. § 1692k(d), 15 U.S.C. §§ 1681n & o.

## Venue

16. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2).

## Parties

17. Plaintiff Becky Berscheid ("Plaintiff") is an adult resident of Stearns County, Minnesota.

18. Defendant Midland is a foreign corporation registered to conduct business in the state of Minnesota.

19. Defendant TransUnion is a foreign limited liability company registered to conduct business in the state of Minnesota.

20. Defendant Experian is a foreign corporation registered to conduct business in the state of Minnesota.

## Facts

21. Plaintiff is, and at all times mentioned herein was, a "consumer" as defined by 15 U.S.C. § 1681(c).

22. Defendant Midland is, and at all times relevant to this First Amended Complaint was, a furnisher of information as that term is used in 15 U.S.C. § 1681s-2.

23. Defendant Midland is also, and at all times relevant to this First Amended Complaint, a "debt collector", as defined by 15 U.S.C. §1692a(6).

24. Defendant TransUnion is, and at all times mentioned herein was, a "consumer reporting agency" as defined by 15 U.S.C. §1681(f).

25. Defendant Experian is, and at all times mentioned herein was, a "consumer reporting agency" as defined by 15 U.S.C. §1681(f).

26. On or about May 6, 2020, Midland Credit Management, Inc. ("Midland") filed a conciliation court action in Stearns County Conciliation Court against Plaintiff. Said action was assigned court file no. 73-CO-20-439 ("the Action").

27. In its Statement of Complaint and Summons, Midland claimed it had purchased an account from Credit One Bank, N.A. upon which Plaintiff allegedly owed money ("the Account").

28. On or about October 6, 2020, a hearing took place in the Action in which Plaintiff contested Midland's right to collect upon the Account.

29. On or about October 7, 2020, Judge Nathaniel D. Welte issued an Order for Judgment on Claim and Counterclaim in which he dismissed Midland's claim with prejudice ("the Judgment").

30. In his decision, Judge Welte found that Midland failed to establish ownership of the Account.

31. Pursuant to the Minnesota General Rule of Practice 515, the Judgment was stayed for a period of 21 days to allow Midland the opportunity to remove the Action to district court and have the Judgment vacated.

32. Midland did not appeal the Action and the Judgment became final on or about November 9, 2020.

33. As a result of the Judgment, Midland could not collect any money from Plaintiff on the Account as a matter of law.

34. On or about December 11, 2020, Plaintiff obtained a copy of her credit file from Defendants TransUnion and Experian.

35. Plaintiff discovered that Midland was continuing to falsely report that Plaintiff was indebted to Midland and past due on the Account.

36. On or about December 22, 2020, Plaintiff disputed the Account with the three nationwide consumer reporting agencies, Equifax, Experian, and TransUnion ("the CRAs") by sending letters to each CRA, detailing that she did not owe Midland any money.

37. Included in Plaintiff's December 22, 2020 dispute letters to the CRAs was a copy of the Judgment.

38. Upon information and belief, upon receipt of Plaintiff's December 22, 2020 dispute, TransUnion provided notice to Midland to investigate the TransUnion dispute.

6

39. Upon information and belief, upon receipt of Plaintiff's December 22, 2020 dispute, Equifax provided notice to Midland to investigate the Equifax dispute.

40. On or about January 16, 2021, Equifax responded to Plaintiff's dispute by continuing to report the aforementioned false balance and past due information furnished by Midland.

41. Upon information and belief, Defendant Midland failed to conduct a reasonable investigation of Plaintiff's Equifax dispute pursuant to 15 U.S.C. § 1681s-2(b) and again furnished the aforementioned false balance and past due information to Equifax.

42. On or about January 14, 2021, TransUnion responded to Plaintiff's dispute by verifying the aforementioned false balance and past due information furnished by Midland.

43. Upon information and belief, Defendant TransUnion failed to conduct a reasonable reinvestigation of Plaintiff's information in violation of 15 U.S.C. § 1681i.

44. Defendant TransUnion failed to review all relevant information provided by Plaintiff in her December 22, 2020 dispute to Experian, as required by and in violation of 15 U.S.C. § 1681i.

45. As evidenced by TransUnion's re-reporting of the Midland tradeline after TransUnion's failure to correct the reporting of the Midland tradeline on her credit report despite being advised that Plaintiff did not owe any money to Midland, TransUnion failed to follow reasonable procedures to assure maximum possible

7

accuracy of the information concerning the individual about whom the report relates as required by and in violation of 15 U.S.C. § 1681e(b).

46. Upon information and belief, Defendant Midland failed to conduct a reasonable investigation of Plaintiff's TransUnion dispute pursuant to 15 U.S.C. § 1681s-2(b) and again furnished the aforementioned false balance and past due information to TransUnion.

47. Experian entirely failed to respond to the December 22, 2020 dispute it received.

48. On or about March 31, 2021, Plaintiff disputed the Account to each of the CRAs a second time by mailing a detailed letter describing the inaccuracy on the Midland tradeline and attaching a copy of the previously sent Judgment.

49. Upon information and belief, upon receipt of Plaintiff's March 31, 2021 dispute, TransUnion provided notice to Midland to investigate the TransUnion dispute.

50. As a result of Plaintiff's March 31, 2021 dispute, TransUnion and/or Midland deleted the Midland tradeline on Plaintiff's TransUnion credit report.

51. Experian again failed to respond to or acknowledge the March 31, 2021 dispute it received.

52. On or after July 28, 2021, Plaintiff disputed the Account a third time to Experian and Equifax by mailing a detailed letter describing the inaccuracy on the Midland tradeline and attaching a copy of the previously sent Judgment.

53. Plaintiff also sent a copy of the July 28, 2021 dispute letter to Midland.

54. Experian again failed to respond to or acknowledge the third dispute it received.

55. On or about October 4, 2021, Plaintiff disputed the Account a fourth time to Experian and Equifax by mail and attaching a copy of the previously sent Judgment.

56. Experian again failed to respond to or acknowledge the October 4, 2021 dispute.

57. Despite Plaintiff sending four separate disputes, Experian did not once provide Plaintiff with the reinvestigation results of Plaintiff's disputes.

58. Upon information and belief, Defendant Experian either failed to conduct any reinvestigations or failed to apprise Plaintiff of the results of its reinvestigations in violation of 15 U.S.C. § 1681i.

59. Defendant Experian failed to review all relevant information provided by Plaintiff in her disputes to Experian, as required by and in violation of 15 U.S.C. § 1681i.

60. As evidenced by Experian's re-reporting of the Midland tradeline despite being advised several times that Plaintiff did not owe any money to Midland, Experian failed to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates as required by and in violation of 15 U.S.C. § 1681e(b).

61. Upon information and belief, Midland received several notifications of the consumer reporting agencies that the information it was furnishing regarding Plaintiff was inaccurate.

62. Upon information and belief, Midland verified the inaccurate information it was reporting about Plaintiff in response to several of Plaintiff's disputes to the CRAs.

63. Upon information and belief, Defendant Midland failed to conduct a reasonable investigation, or otherwise discharge its duties under 15 U.S.C. § 1681s-2(b) and continued to furnish inaccurate information regarding Plaintiff.

64. By furnishing inaccurate information to the CRAs, Defendant Midland communicated credit information it knew or had reason to know was false in violation of 15 U.S.C. § 1692e(8).

65. By furnishing inaccurate information to the CRAs, Defendant Midland made a false representation of the character, amount, or legal status of a debt in violation of 15 U.S.C. § 1692e(2)(A).

66. By furnishing inaccurate information to the CRAs, Defendant Midland made a false representation in connection with the collection of a debt in violation of 15 U.S.C. § 1692e(10).

67. By furnishing inaccurate information to the CRAs, Defendant Midland attempted to collect a debt not authorized by law or contract in violation of 15 U.S.C. § 1692f(1).

68. As a result of the Defendants' conduct, Plaintiff suffered from emotional distress including, but not limited to anger, frustration, anxiety, humiliation, as well as loss of credit opportunities, damage to her credit reputation, and out-of-pocket damages.

69. Further, Plaintiff's credit reports were published to third parties while the inaccurate information on the Midland tradeline was present.

10

70. As a result of the publication to third parties of Plaintiff's credit reports with the inaccurate information regarding the Account on the reports, Defendants caused a defamation-type harm upon Plaintiff.

## Specific Claims

### Count I– Negligent Violations of the FCRA, 15 U.S.C. § 1681 *et seq*.

(*Against all Defendants*)

71. Plaintiff incorporates by reference all of the above paragraphs of this First Amended Complaint as though fully stated herein.

72. The foregoing acts and omissions by Defendants constitute negligent violations of the FCRA, including, but not limited to: 15 U.S.C. §§ 1681e(b), 1681i, and 1681s-2(b).

73. As a result of each negligent violation of the FCRA, Plaintiff is entitled to the following from Defendants: actual damages from Defendants, pursuant to 15 U.S.C. § 1681o(a)(1); and costs together with reasonable attorneys' fees, pursuant to 15 U.S.C. § 1681o(a)(2).

### Count II– Knowing and/or Willful Violations of the FCRA, 15 U.S.C. § 1681 *et seq*.

(*Against all Defendants*)

74. Plaintiff incorporates by reference all of the above paragraphs of this First Amended Complaint as though fully stated herein.

11

75. The foregoing acts and omissions of Defendants constitute knowing and willful violations of the FCRA, including, but not limited to: 15 U.S.C. §§ 1681e(b), 1681i, and 1681s-2(b).

76. As a result of each and every willful violation of the FCRA, Plaintiff is entitled to the following from Defendants: actual damages or statutory damages of not less than $100.00 and not more than $1,000.00, pursuant to 15 U.S.C. §1681n(a)(1)(A); punitive damages as the court may allow, pursuant to 15 U.S.C. §1681n(a)(2); and costs together with reasonable attorneys' fees, pursuant to 15 U.S.C. §1681n(a)(3).

### Count III–Violations of the FDCPA, 15 U.S.C. § 1692, *et. seq.*

(*Against Defendant Midland*)

77. Plaintiff incorporates by reference all of the above paragraphs of this First Amended Complaint as though fully stated herein.

78. The foregoing acts and omissions by Midland constitute violations of the FDCPA, including, but not limited to: 15 U.S.C. §§ 1692e(2)(A), 1692e(8), 1692e(10), and 1692f(1).

79. As a result of each violation of the FDCPA, Plaintiff is entitled to the following from Midland: actual damages from Midland, pursuant to 15 U.S.C. § 1692k(a)(1); statutory damages from Midland, pursuant to 15 U.S.C. § 1692k(a)(2); and costs together with reasonable attorneys' fees, as provided by 15 U.S.C. § 1692k(a)(3).

### Jury Demand

80. Plaintiff hereby demands a trial by jury.

## Prayer for Relief

81. WHEREFORE, Plaintiff, by and through her attorney, respectfully prays for Judgment to be entered in favor of Plaintiff and against Defendants as follows:

   a. All actual damages suffered as a result of Defendants' violations of the FCRA;

   b. All actual damages suffered as a result of Midland's violations of the FDCPA;

   c. Statutory damages as a result of Defendants' violations of the FCRA;

   d. Statutory damages as a result of Midland's violations of the FDCPA;

   e. Punitive damages as a result of Defendants' violations of the FCRA;

   f. An award of costs of litigation and reasonable attorney's fees from each Defendant, pursuant to 15 U.S.C. § 1681o(a)(2) and/or 15 U.S.C. § 1681n(a)(3);

   g. An award of costs of litigation and reasonable attorney's fees from Midland, pursuant to 15 U.S.C. § 1692k(a)(3); and

   h. Any other relief deemed appropriate by this Honorable Court.

Dated: February 11, 2022             Respectfully Submitted,

PETERSON LEGAL, PLLC

/s/ Ryan D. Peterson
Ryan D. Peterson (#0389607)
5201 Eden Avenue, Suite 300
Edina, MN 55436
(612) 367-6568
ryan@peterson.legal
**ATTORNEY FOR PLAINTIFF**


**Anthony P. Chester (#0396929)**
**KAZEROUNI LAW GROUP, APC**
**120 S. 6th St., Suite 2050**
**Minneapolis, MN 55402**
**Phone: 952-225-5333**
**Email: tony@kazlg.com**
*Attorney for Plaintiff*

# VERIFICATION OF FIRST AMENDED COMPLAINT AND CERTIFICATION BY PLAINTIFF

I, Becky Berscheid, declare under penalty of perjury, as provided for by the laws of the United States, 28 U.S.C. § 1746, that the following statements are true and correct:

1. I am the Plaintiff in this civil proceeding.
2. I have read the above-entitled civil First Amended Complaint prepared by my attorneys and I believe that all the facts contained in it are true, to the best of my knowledge, information, and belief, formed after reasonable inquiry.
3. I believe that this civil First Amended Complaint is well grounded in fact and warranted by existing law or by a good faith argument for the extension, modification, or reversal of existing law.
4. I believe that this civil First Amended Complaint is not interposed for any improper purpose, such as to harass any Defendant(s), cause unnecessary delay to any Defendant(s), or create a needless increase in the cost of litigation to any Defendant(s), named in the First Amended Complaint.
5. I have filed this civil First Amended Complaint in good faith and solely for the purposes set forth in it.

Dated this 11th day of February 2022

/s/ *Becky Berscheid* (DocuSigned by: 91673FC8EA714D8...)

Becky Berscheid