# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Becky Berscheid,

      Plaintiff,

vs.

Midland Credit Management, Inc., and
Experian Information Solutions, Inc.,

      Defendants.

Case No. 0:22-cv-00086-JRT-LIB

**PLAINTIFF'S MEMORANDUM
OF LAW IN SUPPORT OF
PLAINTIFF'S MOTION FOR
ATTORNEYS' FEES**

## <u>INTRODUCTION</u>

This Memorandum is submitted in support of Plaintiff's Motion for Attorneys' Fees from Defendant Midland Credit Management, Inc. ("Midland"), pursuant to Fed. R. Civ. P. 54(d)(2) and Local Rule 54.3. Plaintiff accepted Midland's Fed. R. Civ. P. 68 Offer of Judgment in the amount of $10,001.00. [Dkt. 44]. Plaintiff has therefore been successful in her action to enforce liability against Midland for its violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA") and the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"). As a result, pursuant to 15 U.S.C. § 1681n, 15 U.S.C. § 1681o, and/or 15 U.S.C. § 1692k(a)(3), Plaintiff is entitled to costs of the action, together with reasonable attorneys' fees as determined by the Court. Plaintiff now seeks an award by the Court of $45,068.58 in attorneys' fees.

# BACKGROUND

## *Factual and Procedural History*

The instant case emanated from a lawsuit filed by Midland against Plaintiff Becky Berscheid on May 6, 20220 in Stearns County Conciliation Court. [Dkt. 7, ¶ 26]. In that action, Midland alleged that it had been assigned a Credit One Bank, N.A. credit card account (the "Account") belonging to Ms. Berscheid for which she had failed to make payment. [*Id.*, ¶ 17]. On October 6, 2020, the undersigned counsel, Ryan Peterson, represented Ms. Berscheid at a contested hearing on Midland's claim. Peterson Decl. ¶ 5. District Court Judge Nathaniel D. Welte determined that Midland failed to prove it was assigned the Account and dismissed Midland's claim with prejudice. [Dkt. 7, ¶ 29].

Despite this finding, Midland continued to provide false information to the nationwide consumer reporting agencies ("CRAs") that Ms. Berscheid was indebted to Midland on the Account. [*Id.*, ¶ 35]. As a result, Ms. Berscheid was forced to mail letters to the CRAs along with copies of the court order informing them that she did not owe Midland money for the Account. [*Id.*, ¶ 36]. The CRAs then forwarded Plaintiff's disputes to Midland. [*Id.*, ¶ 37]. Despite these disputes, supporting documentation, and (presumably) their own records, Midland falsely verified to the CRAs that Ms. Berscheid owed it money on the Account. [*Id.*, ¶ 41].

On or about December 27, 2021, Experian Information Solutions, Inc. ("Experian") was served with a Summons and Complaint for an action in the Seventh Judicial District of the State of Minnesota, Stearns County. [Dkt. 1, ¶¶ 2-3]. Experian removed the action to the present Court on or about January 14, 2022. *See* [Dkt. 1]. On or about February 11, 2022, Plaintiff filed her Amended Complaint, adding Defendants TransUnion LLC ("TU") and Midland, along with several additional factual allegations. *See* [Dkt. 7]. Shortly before the filing of the Rule 26(f) Report, Plaintiff resolved her claims against TU and TU was subsequently dismissed from the action. *See* [Dkt. 23; 39].

On August 25, 2022, Defendants Experian and Midland filed a motion for a protective order, which Plaintiff opposed. *See, e.g.* [Dkt. 28; 30; 40]. A protective order was signed by Magistrate Judge Brisbois and entered on October 13, 2022.

On November 11, 2022, Defendant Midland filed a notice of acceptance of Defendant Midland's offer of judgment of $10,001.00, along with the offer itself. [Dkt. 44]. Judgment was entered in favor of Plaintiff against Midland on November 1, 2022. [Dkt. 45]. The present motion is now ripe because Plaintiff was successful against Midland, and is now entitled to her costs, together with reasonable attorneys' fees, as determined by the Court.

### *Brief Summary of Counsel's Work[1]*

Once the matter was removed, Plaintiff elected to amend her Complaint to add defendants TU and Midland, as well as expand upon the allegations in an effort to make a more detailed showing of the multiple levels of failures and violations of law that occurred and ultimately caused Plaintiff's damages. *See* [Dkt. 7]. Compared with the original Complaint filed in state court, Plaintiff's Amended Complaint more than doubled the number of paragraphs containing specific allegations as to the Defendants' conduct. *Compare* [Dkt. 1-1] *with* [Dkt. 7]. While each Defendant had its role to play in violating Plaintiff's rights and causing her damages, Midland was ultimately the catalyst for the inaccurate reporting. *See generally* [Dkt. 7].

After proceeding through the Rule 26(f) Report and all of its accompaniments (e.g. statement of the case and confidential settlement letter), on April 21, 2022, Midland issued Plaintiff a Rule 68 offer of judgment in the amount of $1,001.00 plus attorneys' fees and costs. Peterson Decl. ¶ 6, Ex. B. Plaintiff did not accept this offer of judgment.

Thereafter, Plaintiff and Midland engaged in written discovery. Plaintiff drafted and served discovery upon Midland and responded to Experian's discovery, which Midland received, and benefited from. *See* Peterson Decl. ¶ 9, Ex. D; Chester Decl. ¶

---

[1] Plaintiff does not intend to identify all work performed to date in this case; rather, this section is designed to be a broad overview. For specific work performed, Plaintiff refers the Court to Plaintiff's counsel's Fee Reports. *See* Peterson Decl. ¶ 9, Ex. D; Chester Decl. ¶ 10, Ex. B.

10, Ex. B. Upon receipt of Midland's discovery responses, Plaintiff identified several deficiencies with Midland's responses. *See* Peterson Decl. ¶ 9, Ex. D; Chester Decl. ¶ 10, Ex. B. Plaintiff and Midland thereafter met and conferred by phone and email over Plaintiff's concerns. *See* Peterson Decl. ¶ 9, Ex. D; Chester Decl. ¶ 10, Ex. B. Midland subsequently produced additional documentation and amended responses as a result of the meet and confer process. *See* Peterson Decl. ¶ 7, Ex. C.

Concurrent with the discovery dispute that Plaintiff and Midland were engaged in, the parties differed on their belief as to whether a protective order was necessary for the case. *See* Peterson Decl. ¶ 9, Ex. D; Chester Decl. ¶ 10, Ex. B. Plaintiff's position was that a blanket protective order was not necessary, while Defendants Midland and Experian believed that they needed one in order to proceed with the litigation. *See* Peterson Decl. ¶ 9, Ex. D; Chester Decl. ¶ 10, Ex. B. Through the meet and confer process, Plaintiff offered compromises that allowed for a blanket protective order that was largely based on the Court's model protective order, but with some modifications to certain provisions. *See* Peterson Decl. ¶ 9, Ex. D; Chester Decl. ¶ 10, Ex. B; *see also* [Dkt. 31-1, pgs. 45-46]. The parties were unable to agree on any modifications, and Midland, with Experian signing on, ultimately filed a motion for a protective order that Plaintiff opposed. [Dkt. 28]. The Court later entered a protective order, albeit one that was not everything that Midland and Experian had asked for. *See*

[Dkt. 42] (entering a protective order based upon the model protective order, but without an "Attorney Eyes Only" provision).

During the protective order motion briefing, Midland provided a second offer of judgment of $10,001.00 (plus attorneys' fees and costs) to resolve Plaintiff's claims against Midland only. *See* [Dkt. 44]. Plaintiff accepted on September 8, 2022. *See* [Dkt. 44]. Thereafter, counsel for Midland and counsel for Plaintiff engaged in settlement discussions to determine if Plaintiff's fees could be resolved short of a fee motion before the Court. *See* Peterson Decl. ¶ 7, Ex. C. After deducting time devoted to Midland's co-defendants from Plaintiff's overall fees incurred in the action and reducing that amount further by 10%, Plaintiff identified her counsel's hourly rates and made an initial demand on September 19, 2022 in the amount of $34,731.90 in fees and $32.50 in costs. *Id*. Identifying the hourly rate and total fees requested allowed Midland to make a decision based upon the hours incurred and the hourly rates. *Id*. However, Midland refused to engage meaningfully in negotiations on fees unless Plaintiff first produced her counsel's fee records. *Id*.

Plaintiff offered to produce her counsel's fee records if Midland's counsel would also agree to produce their fee records, so that the parties could better identify the reasonableness of each item of time incurred (i.e. Midland's counsel's expenditure of time on similar tasks could be helpful in measuring the reasonableness of time incurred by the parties on specific tasks). *See* Peterson Decl. ¶ 7, Ex. C. Midland's

counsel did not agree to produce their fee reports; instead, Midland's counsel proposed that Plaintiff blindly agree to accept whatever amount Midland incurred in attorneys' fees in order to resolve the fee dispute. *Id*. According to Midland, if Plaintiff accepted that proposition, Midland's counsel would only then reveal their fee records, including the actual amount of fees incurred. *Id*. Plaintiff requested that Midland identify the dollar figure that that proposal represented, but Midland refused to provide that figure and instead demanded that Plaintiff accept the proposal without knowing a key term—the actual dollar amount of the proposal. *Id*. Plaintiff again requested information to better understand Midland's position and clarified that Plaintiff merely needed Midland to identify its counsel's time incurred and hourly rates in order to evaluate the proposal. *Id*. Midland ignored Plaintiff's requests and, instead, filed the Rule 68 acceptance and underlying offer on October 28, 2022. *Id*. In the lead-up to Midland's filing of the Rule 68 acceptance, Midland never made an offer to Plaintiff in any specific dollar amount for resolution of the fee dispute. Peterson Decl. ¶ 8.

Plaintiff renewed the initial demand for attorneys' fees on October 28, 2022 with a response due from Midland by November 2, 2022. Peterson Decl. ¶ 7, Ex. C. As of November 14, 2022, Plaintiff still had not received a response from Midland to Plaintiff's initial demand. *Id*. Once again, on November 14, Plaintiff's counsel reached out and requested a response from Midland and renewed the initial demand

one last time for Midland to respond by 4:00 PM on November 15, 2022. *Id.* At the time Plaintiff filed her motion, no response had been received from Midland's counsel. *Id.*, ¶24.

Plaintiff's total attorney fee time incurred by each of Plaintiff's attorneys for work performed against Midland, multiplied by counsels' respective rates, amounts to: $53,039.50. Peterson Decl. ¶ 9, Ex. D; ¶ 28, 25; Chester Decl. ¶¶ 10, Ex. B; ¶ 23. Counsel for Plaintiff deducted and eliminated time that was solely attributable to the other defendants in this action; however, in case Plaintiff missed any deductions, Plaintiff agrees to reduce the overall attorney fee request by an additional 15%. Peterson Decl. ¶ 26, Chester Decl. ¶ 30. As a result, through the present motion, Plaintiff seeks an attorney fee award of $45,068.58. *See* Peterson Decl. ¶ 26; Chester Decl. ¶ 30.

## ARGUMENT

### I.     Plaintiff is Entitled to an Award of Attorney's Fees and Costs

#### A.     *Plaintiff brought a successful action*

A plaintiff may be considered a "prevailing party" for the purposes of recovering attorney's fees if the plaintiff "succeed[s] on any significant issue in litigation which achieves some of the benefit sought in bringing suit." *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1986). A "successful action" in turn requires that "the plaintiff must receive some relief beyond mere entry of judgment." *Nagle v.*

*Experian Info. Sols., Inc.,* 297 F.3d 1305, 1306 (11th Cir. 2002). As a baseline, an award of nominal damages is sufficient to satisfy the designation of a "successful action". *Id.* at 1307 (citing *Buckhannon Bd. & Care Home v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 604 (2001). However, "[w]here a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." *Id.* at 435. *Hensley*, 461 U.S. at 435.

In the present case, Plaintiff brought a successful action against Midland. Plaintiff obtained a judgment against Midland in the amount of $10,001.00 and was the prevailing party. [Dkt. 44]. This judgment is over ten times the maximum statutory damages Plaintiff is entitled to under the FDCPA or FCRA—a far cry from mere nominal damages that open the door for the Court to award costs together with reasonable attorneys' fees. *See* 15 U.S.C. § 1692k(a)(2)(A); 15 U.S.C. § 1681n(a)(1)(A); *see also Nagle,* 297 F.3d at 1306.

### B.     An award of attorneys' fees is mandatory in a successful action

Fee shifting provision are designed to attract competent counsel to vindicate consumers' rights. *See Tolentino v. Friedman*, 46 F.3d 645, 652 (7th Cir. 1995) ("in order to encourage able counsel to undertake FDCPA cases, as congress intended, it is necessary that counsel be awarded fees commensurate with those which they could obtain by taking other types of cases"); *Greene v. Equifax Info. Servs.*, No. 19-cv-11094, 2021 U.S. Dist. LEXIS 227280, at *2 (E.D. Mich. Mar. 15, 2021) ("By

providing competitive rates, Congress and courts assure that attorneys will take such cases and hence increase the likelihood that the congressional policy of redressing public interest claims will be vindicated.") (citing *Student Public Interest Research Group v. AT&T Bell Laboratories*, 842 F.2d 1436, 1449 (3rd Cir. 1988)). Thus, by awarding mandatory attorneys' fees to a successful consumer under the FDCPA and/or FCRA, courts encourage attorneys to continue to step forward to advocate for consumers who otherwise may not be able to afford an attorney. *See Murphy v. Ford Motor Credit Co.*, 629 F.2d 556 (8th Cir. 1980) (a Truth in Lending Act case that noted that attorney's fees awards "encourage meritorious enforcement actions under the provisions of the Act").

Policy aside, both the FDCPA and FCRA expressly require the recovery of costs, together with reasonable attorneys' fees, to a successful Plaintiff. *See* 15 U.S.C. § 1692k(a)(3); 15 U.S.C. § 1681n(a)(3); and 15 U.S.C. § 1681o(a)(2). The relevant language used in both statutes is nearly identical.[2] Plainly, an award of attorneys' fees is mandatory under the relevant statutes. *See, e.g., Alberts v. Nash Finch Co.*, 245 F.R.D. 399, 410 (D. Minn. 2007) ("the FDCPA's fee-shifting provision is *mandatory*") (emphasis added); *Greene*, 2021 U.S. Dist. LEXIS 227280,

---

[2] *Compare* the FDCPA's 15 U.S.C. § 1692k(a)(3) ("in the case of any successful action to enforce the foregoing liability, the costs of the action, together with *a reasonable attorney's fee* as determined by the court") *with* the FCRA's 15 U.S.C. §§ 1681n(a)(3) and 1681o(a)(2) ("in the case of any successful action to enforce any liability under this section, the costs of the action together with *reasonable attorney's fees* as determined by the court.") (emphasis added).

at *1 ("[t]he *mandatory* attorney's fees provided by 15 U.S.C. §§ 1681n(a)(3) and 1681o(a)(2) reflect Congress' intent that the FCRA be enforced by consumer's counsel acting as private attorneys general") (emphasis added); *Graziano v. Harrison*, 950 F.2d 107, 113 (3rd Cir. 1991) (the FDCPA "*mandates* an award of attorney's fees") (emphasis added); *Zagorski v. Midwest Billing Services, Inc.*, 128 F.3d 1164, 1167 (7th Cir. 1997) (refusal to award attorney fees to debtors who brought successful action was abuse of discretion, inasmuch as award of reasonable attorney fees to debtors was *mandatory*) (emphasis added). However, beyond requiring that an award be made, the Court has discretion to determine the *amount* of reasonable attorneys' fees to award.

## II. Plaintiff is Entitled to all Attorneys' Fees, since her Attorneys' Time was Reasonably Expended, and the Hourly Rates are Reasonable

### A. *Attorneys' fees awards are calculated according to the lodestar method*

In calculating an award of attorney's fees, the court must first begin with the "Lodestar" figure, which one calculates by multiplying the hours reasonably expended by a reasonable hourly rate. *Hensley*, 461 U.S. at 433 (viewing an award of fees under 42 U.S.C. § 1988); *see also Armstrong v. Rose Law Firm, P.A.*, No. CIV. 00-2287MJD/SRN, 2002 WL 31050583, at *3 (D. Minn. Sept. 5, 2002) (applying the Lodestar method in an FDCPA action); *Young v. Diversified Consultants, Inc.*, 554 F. Supp. 2d 954 (D. Minn. 2008). The burden is on the

applicant to prove that the fee request is reasonable, with a strong presumption that the lodestar amount represents a fair and appropriate fee award. *Hensley*, 461 U.S. at 436. The Court must consider:

(1)　　the plaintiff's overall success;

(2)　　the necessity and usefulness of the plaintiff's activity in the particular matter for which fees are requested; and

(3)　　the efficiency with which the plaintiff's attorneys conducted that activity.

*Jinkins v. Missouri*, 127 F.3d 709, 718 (8th Cir. 1997).

The Court may also consider other factors in calculating the lodestar, including: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal service; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Hensley*, 461 U.S. at 430 n.3. However, "[t]he most critical factor is the degree of success obtained." *Hensley*, 461 U.S. at 436; *Zagorski*, 128 F.3d at 116; *Tolentino*, 46 F.3d at 652.

Here, the Plaintiff achieved a complete victory in that she received a judgment of over ten times her maximum statutory damages under either the FDCPA or FCRA. [Dkt. 44]; *see also* 15 U.S.C. § 1692k(a)(2)(A); 15 U.S.C. §§ 1681n(a)(3) and 1681o(a)(2). Therefore, Plaintiff should be awarded all of her attorneys' fees requested. *See Hensley*, 461 U.S. at 435.

### B. *Plaintiff's attorney's hours were reasonably expended*

The Court must first determine whether the number of hours spent by Plaintiff's counsel was reasonable. This analysis is within the sound discretion of the district court. *Hensley*, 461 U.S. at 437. In conducting its analysis, "a district court 'need not, and indeed should not,' scrutinize each billing entry of an attorney who is seeking a fees award, because the 'essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection.'" *Ricketson v. Advantage Collection Professionals, LLC*, No. 21-cv-2541 (WMW/ECW), 2022 U.S. Dist. LEXIS 153738, at *9 (D. Minn. Aug. 26, 2022) (quoting *Fox v. Vice*, 563 U.S. 826, 838 (2011)); *see also Nathanson v. Diversified Adjustment Serv.*, No. 18-CV-3102 (PJS/ECW), 2019 U.S. Dist. LEXIS 156770, at *10-11 (D. Minn. Sep. 13, 2019).

Plaintiff supports his request for compensation of 68.1 hours by Attorney Ryan Peterson, 3.6 hours by Paralegal Michelle Marie, and 71.0 hours by Attorney Anthony Chester by inclusion of detailed logs of tasks completed on Plaintiff's case

and the time to accomplish those tasks, as identified in 1/10 hour increments. *See* Peterson Decl. ¶ 9, Ex. D; ¶ 18; Chester Decl. ¶ 10, Ex. B; ¶ 23.

While the fee reports tell the story of what work Plaintiff's attorneys are requesting compensation for, there are categories of tasks that Plaintiff suspects Midland may push back on in its defense against the present fee motion—specifically Plaintiff's time incurred in the protective order dispute, Plaintiff's time incurred in the meet and confer process on the discovery responses, and Plaintiff's time incurred in the lead up to the fee motion.

As noted above, Midland initially issued an offer of judgment in the amount of $1,001.00 to Plaintiff in April. Peterson Decl. ¶ 6, Ex. B. Thereafter the parties engaged in discovery disputes and motion practice. The discovery meet and confer process caused Midland to supplement responses and produce additional documentation, so, it was not all for naught. *See* Peterson Decl. ¶ 7, Ex. C. At the same time it sent updated responses, Midland also issued a second Rule 68 offer of judgment for $10,001.00.

Additionally, both the protective order motion and the present fee motion were spurred by Midland's filings in this case. In both situations, Plaintiff sought to find a compromise and refrained from seeking Court intervention. *See* Peterson Decl. ¶ 7, Ex. C; Dkt. 31.1, Ex. D. It was Midland that forced Court action through its filing of a motion for a protective order and by filing the Rule 68 offer of

judgment and acceptance. *See* [Dkt. 28, 29, 30, 31, 32, 35, 44]. Plaintiff was required to respond to those filings.

With regard to the motion for a protective order, Plaintiff offered a compromise that was largely based upon the Court's model protective order, but Midland refused to accept Plaintiff's proposals and filed a motion to force the issue instead. *See* Peterson Decl. ¶ 7, Ex. C. The Court ultimately entered a protective order, but Midland did not get everything it asked for in the protective order. *Compare* [Dkt. 32, ¶ 3(c)] *with* [Dkt. 42, ¶ 3]. The protective order that was entered by this Court did not include an "Attorney's Eye's Only" provision that Midland sought to include in such an order. *See* [Dkt. 42, ¶ 3]. It was not a complete victory for Midland.

Prior to filing the offer and acceptance, and despite Midland's refusal to negotiate in good faith and provide an actual dollar offer, Plaintiff resolved to send Plaintiff's counsel's fee sheets to Defendant in order to try to make one last effort at resolving the matter. *See* Chester Decl. ¶ 10, Ex. B (October 24, 2022: "Email to Ryan - RE: Next steps for production of attorneys' fees billing to Midland"). However, again, Defendant forced briefing on the issue by filing the offer of judgment and acceptance on October 28, 2022. [Dkt. 44]. This caused Plaintiff to begin briefing within the short, 14-day window to make a request for fees and costs to the Court. *See* Peterson Decl. ¶ 9, Ex. D; Chester Decl. ¶ 10, Ex. B; Fed. R. Civ.

P. 54(d)(2)(B)(i). Nonetheless, despite incurring additional attorneys' fees, in a show of good-faith, on October 28, 2022, Plaintiff again renewed Plaintiff's initial offer of $34,764.40 (inclusive of fees and costs) with a response due from Midland by November 2, 2022. Peterson Decl. ¶ 7, Ex. C. Midland did not respond by November 2, 2022 and Plaintiff began briefing the present motion thereafter. *See* Peterson Decl. ¶ 9, Ex. D; Chester Decl. ¶ 10, Ex. B. On November 14, 2022, Plaintiff *again* nudged Midland for a response before filing the present fee motion, and *again* (despite incurring attorneys' fees in briefing the present motion) renewed the initial demand for fees and costs of $34,764.40 with a response due by November 15, 2022 at 4:00 PM. Peterson Decl. ¶ 7, Ex. C. Midland did not respond. *Id.* ¶ 24.

Plaintiff incurred much of her attorneys' fees because of Midland's deficient responses in discovery and because of its filings in this Court. Plaintiff merely responded to those items and incurred attorneys' fees. Moreover, despite Plaintiff's requests, Midland refused to provide an actual, identifiable dollar value response to Plaintiff's initial demand for attorneys' fees. *See* Peterson Decl. ¶ 7, Ex. C. Midland's choice to decline to negotiate on Plaintiff's attorneys' fees—despite repeated invitations from Plaintiff—forced the filing of this present fee motion. Plaintiff should, accordingly, be awarded her fees incurred in this matter from inception and through the fee motion.

### C. *Plaintiff's counsels' hourly rates are reasonable*

The Court must also determine whether the Plaintiff's counsels' hourly rates are reasonable. To make such a determination, the Court should consider the prevailing market rate for similar services in the community where the litigation takes place when performed by "lawyers of reasonably comparable skill, experience, and reputation." *McDonald v. Armontrout*, 860 F.2d 1456, 1458-59 (8th Cir. 1998). This Court may also consider the rate as measured as "commensurate which [counsel] could obtain by taking other types of cases." *Tolentino*, 46 F.3d at 652-53.

### 1. *Plaintiff's counsel are experienced consumer protection attorneys*

Ryan D. Peterson is a consumer protection attorney based in Edina, Minnesota. Mr. Peterson became licensed to practice law in 2008 and is admitted in the states of Minnesota, Wisconsin, and Michigan. Peterson Decl. ¶ 3, Ex. A. He is admitted in several federal district courts across the country. *Id.*

From 2010 to 2013, Mr. Peterson collected credit card receivables for a law firm in Minneapolis at which he rose to the position of Managing Attorney of the collection practice. *Id.* Since the end of 2013, Mr. Peterson has litigated FDCPA and FCRA cases in state and federal courts. *Id.* Mr. Peterson also maintains a substantial debt collection defense practice, focusing exclusively on representing consumers

sued for unsecured debts. *Id.* Mr. Peterson's plaintiff consumer and debt defense specialties comprise 90 percent of his practice. Peterson Decl. ¶ 13.

Mr. Peterson has presented at several CLEs regarding debt collection and consumer law. Peterson Decl. ¶ 3, Ex. A. Mr. Peterson has also taught consumers how to remove errors from their credit reports through Minneapolis Community Education. *Id.*

In 2019, the Minnesota Court of Appeals awarded Mr. Peterson's attorneys' fees at the rate of $350.00 per hour. *See Bulle v. Brown*, Court File No. A18-2089 (Minn. Ct. App. Jun. 3, 2019). Based on his experience, Mr. Peterson's clients pay $365.00 per hour on those cases he assumes on an hourly basis. Peterson Decl. ¶ 14.

Anthony P. Chester is a consumer protection attorney based in Minneapolis, Minnesota. Chester Decl. ¶ 7, Ex. A. Mr. Chester became licensed to practice law in 2013. Chester Decl. ¶ 7, Ex. A. He is licensed to practice in Minnesota, Michigan, Missouri, and Texas state courts. Chester Decl. ¶ 7, Ex. A. He is also licensed in over a dozen federal courts and has consumer protection cases currently pending in federal courts across the country. *See* Chester Decl. ¶¶ 7, 16, Ex. A.

Mr. Chester regularly litigates FDCPA and FCRA cases. Chester Decl. ¶¶ 14, 15. He has represented over 900 consumers in individual consumer law matters to date, including over 200 FCRA and/or FDCPA cases filed in federal courts. Chester Decl. ¶ 14. This experience includes federal district court and appellate court

matters. *See, e.g., Coyne v. Midland Funding LLC*, 895 F.3d 1035 (8th Cir. 2018). Mr. Chester has also presented on several consumer law topics (including on the FDCPA and FCRA) and written articles on FCRA and FDCPA matters. Chester Decl. ¶ 7, Ex. A.

Clients have paid Mr. Chester at his standard hourly rate of $395 per hour. Chester Decl. ¶ 20. Due to Mr. Chester's experience and successes in litigation, Mr. Chester presently charges an hourly rate of $395.00 per hour. Chester Decl. ¶ 12.

> 2.    *Plaintiff's counsels' hour rates are comparable to rates approved for consumer attorneys in this district*

Mr. Peterson and Mr. Chester's hourly rates are within a comparable range to hourly rates approved for consumer litigation attorneys in the District of Minnesota over the last several years. *See, e.g., Hashi v. Law Offices of David M. Katz P.C.*, No. 20-cv-02443 (SRN/ECW), 2021 U.S. Dist. LEXIS 66624, at *3-4 (D. Minn. Apr. 6, 2021) (awarding $550 an hour in an FDCPA case); *Heroux v. Callidus Portfolio Mgmt.*, No. 17-cv-05132 (HB), 2019 U.S. Dist. LEXIS 1041, at *11 (D. Minn. Jan. 3, 2019) ($400 an hour in and FDCPA case); *Price v. Midland Funding LLC*, No. 18-CV-0509 (SRN/SER), 2018 WL 5259291, at *4-5 (D. Minn. Oct. 22, 2018) ($400 an hour in an FDCPA case); *Gupta v. Arrow Fin. Servs., LLC*, No. 09-CV-3313 SRN/SER, 2012 WL 1060054, at *2 (D. Minn. Mar. 29, 2012) (awarding $425 per hour on an FDCPA case); *Phenow v. Johnson, Rodenberg & Lauinger, PLLP*, 766 F. Supp. 2d 955, 958 (D. Minn. 2011) (awarding $350 per

hour on an FDCPA case); *Gorton v. Debt Equities, LLC*, No. CIV. 08-4817 MJD/JJK, 2009 WL 9073861, at *4 (D. Minn. July 13, 2009) (finding a rate of $350 per hour for first chair in a FDCPA case reasonable).

Five years ago, the *Kuntz* court acknowledged that the median hourly rate for consumer attorneys in Minnesota was $350. *Kuntz v. Messerli & Kramer P.A.*, No. 16-CV-2676 (JNE/BRT), 2017 U.S. Dist. LEXIS 123498, at *6-7 (D. Minn. Aug. 4, 2017). Adjusting for inflation, the buying power of $350 in August of 2017 has the same buying power as $423.12 in September 2022.[3] By merely keeping up with inflation, the median hourly rate in Minnesota would need to raise by over 20% from 2017 levels. *See id.*

3. *Other consumer attorneys attest to the reasonableness of Plaintiff's counsels' hourly rates*

Other consumer protection attorneys in the community agree that Mr. Peterson's hourly rate of $365 and Mr. Chester's rate of $395 per hour are each reasonable and justified. *See* Peterson Decl. ¶¶ 15, 16, 22, Exs. E, F, and H: Declaration of Mark Vavreck ¶¶ 14-16; Declaration of Tommy Lyons ¶¶ 14-16; Declaration of Adam Strauss ¶¶ 15-16; *see* Chester Decl. ¶¶ 17, 18, 19, Exs. C, D, E, Declaration of Adam R. Strauss ¶¶ 16-17; Declaration of Tommy Lyons ¶¶ 10-12; Declaration of Mark Vavreck ¶¶ 14-16. These attorneys are not only familiar

---

[3] This figure was derived from using the calculator developed by the U.S. Bureau of Labor Statistic. *See https://www.bls.gov/data/inflation_calculator.htm* (accessed on November 8, 2022).

with Plaintiff's counsel, but also familiar with the broader consumer law practice in the District of Minnesota.

        4.    *The hourly rates requested are comparable to the median consumer protection attorneys' hourly rates*

The United States Consumer Law Attorney Fee Survey Report form 2017-2018 (the "Fee Report") provides additional statistical evidence that Plaintiff's counsels' hourly rates are reasonable based upon prevailing market rates for attorneys practicing consumer law. *See* Chester Decl. ¶ 27, Ex. F. The Fee Report provides data points that are based on reported data from attorneys and from fee decisions issued by courts from 2017-2018. Chester Decl. ¶ 27, Ex. F, pg. 22. According to the Fee Report, on a national scale, the median hourly rate for all attorneys practicing consumer law in a metropolitan area was $350.00 per hour. Chester Decl. ¶ 27, Ex. F, pg. 55. In Minnesota, the metropolitan median attorney rate was $350.00, while the median attorney rate for Minneapolis/St. Paul in particular was $350.00. Chester Decl. ¶ 27, Ex. F, pgs. 129, 361. Once more, adjusting for inflation from $350 as of December 2018 to September 2022, $350 would represent $413.49 in today's dollars. *See https://www.bls.gov/data/inflation_calculator.htm*.

Here, Plaintiff's counsel, Ryan Peterson and Anthony Chester, are consumer attorneys based in the Minneapolis-area. *See* Peterson Decl. ¶ 2; Chester Decl. ¶ 7. Ex. A. According to the Fee Report, both Mr. Peterson and Mr. Chester are requesting hourly rates below the national, state, and Minneapolis/St. Paul metropolitan median

rates for consumer law attorneys, when adjusted for inflation. *See* Chester Decl. ¶ 27, Ex. F; *see also* https://www.bls.gov/data/inflation_calculator.htm.

> 5. *Midland's counsel bills at $400 (or more) in consumer law matters*

In a different, but recent matter before this Court, counsel for Midland, Patrick Newman, represented to the Court that Mr. Newman has clients who pay hourly rates of $400 (or more) in FDCPA matters before the District of Minnesota. *See* Chester Decl. ¶ 28, Ex. G, ¶ 9.[4] As background, Mr. Newman was admitted to practice law in both Minnesota and Wisconsin in 2013. *See* Chester Decl. ¶ 28, Ex. G, ¶ 2. Mr. Newman acted as an attorney for a collection law firm from 2013 through 2015. *See* Chester Decl. ¶ 28, Ex. G, ¶ 4. Mr. Newman's current practice has focused on the defense of claims asserted under the FDCPA, FCRA, and TCPA and he has represented clients in hundreds of matters nationwide. *See* Chester Decl. ¶ 28, Ex. G, ¶¶ 4-5.

Counsel for Plaintiff have similar backgrounds but currently advocate on the other side of the "v". Mr. Peterson also practiced consumer collections before transitioning to representing consumers. *See* Peterson Decl. ¶ 3, Ex. A. Mr. Peterson continues to defend consumer collection matters, including the state court case that

---

[4] However, for the *Ricketson v. Advantage Collection Professionals, LLC* case that the declaration was filed in, the counsel identified that Advantage Collection Professionals, LLC was charged an hourly rate of only $295 per hour, due to a volume discount agreement with the debt collector's insurance carrier. *See id.*

gave rise to this litigation and in which he obtained a favorable outcome for his client. *See* Peterson Decl. ¶ 3, Ex. A; ¶¶ 12-13. For the last nine years, Mr. Peterson has also brought lawsuits against companies and on behalf of consumers for their violations of the FDCPA, FCRA, and TCPA. *Id.*

Mr. Chester was admitted to practice in Michigan in 2013, but later was admitted in Minnesota, Missouri, and Texas state courts as well. *See* Chester Decl. ¶ 7, Ex. A. Since 2015, Mr. Chester has focused his practice on representing consumers in FDCPA, FCRA, and TCPA claims. *See* Chester Decl. ¶ 7, Ex. A. Mr. Chester has represented hundreds of consumers nationwide in consumer law matters. *See* Chester Decl. ¶ 14.

Here, Plaintiff's counsel have relatively similar backgrounds with counsel for Midland. Plaintiff's counsel are requesting less than the amount counsel for Midland charges for defense of the same type of case—e.g. $400 (or more)[5]—yet, Plaintiff's counsel were exposed to greater risk because they took the matter on a contingency fee basis. *See* Chester Decl. ¶ 28, Ex. G; *see also*, Section V *infra*. If a rate of $400 (or more) to defend FDCPA suits reasonable for the defense bar, it should be reasonable for the Plaintiff's bar to prosecute such actions as well.

---

[5] Plaintiff repeatedly requested that Midland identify its attorneys' hourly rates and hours expended in the present action, but Midland either ignored or refused Plaintiff's requests. Peterson Decl. ¶ 7, Ex. C. Thus, Plaintiff does not know what Midland's attorneys' hourly rates were in the present matter. However, Mr. Newman's assertion that he charges $400 (or more) for defense of FDCPA matters identifies the market rate for his defense. *See* Chester Decl. ¶ 28, Ex. G, ¶ 9.

**D. Plaintiff is entitled to all attorney's fees reasonably expended for time spent recovering fees through a fee application**

Attorney's fees are generally awarded for time spent recovering fees through a fee application and related proceedings. Indeed particularly "[i]n statutory fee cases, federal courts . . . have uniformly held that time spent in establishing the entitlement to and amount of the fee is compensable." *In re Nucorp Energy, Inc.*, 764 F.2d 655, 659-660 (9th Cir. 1985). A wealth of federal district court authority from all over the country supports this approach. *Zortman v. JC Christensen & Associates, Inc.*, 870 F. Supp. 2d 694, 697 (D. Minn. 2012) ("The district courts that have addressed similar arguments conclude that, under the FDCPA, a plaintiff is entitled to attorney's fees accumulated after a Rule 68 offer including those associated with preparing a fee petition and resulting litigation.") (citing *Hernandez v. Asset Acceptance, LLC*, 279 F.R.D. 594, 597-98 (D. Colo. 2012); *Andrews v. Prof'l Bureau of Collections of Md., Inc.*, 270 F.R.D. 205, 207 (M.D. Pa. 2010); *Valencia v. Affiliated Grp., Inc.*, 674 F.Supp.2d 1300, 1304 (S.D. Fla. 2009)). This is so because it would be inconsistent to dilute a fees award by refusing to compensate attorneys for the time they reasonably spent in establishing their rightful claim to the fee. *In re Nucorp Energy, Inc.*, 764 F.2d 655 at 660; *Kinney v. Int'l Bhd. of Elec. Workers*, 939 F.2d 690, 695 (9th Cir. 1991).

Importantly, the Rule 68 Offer of Judgment that Plaintiff accepted did not in any way limit the attorney's fees to the date of the offer. *See* [Dkt. 44]. The Offer

properly provided for "costs, disbursements and reasonable attorney's fees" as related to the judgment obtained by Plaintiff. [Dkt. 44]. Midland likely understood that the Offer of Judgment had to be phrased this way in order to be effective. It operates so that if Plaintiff rejected the Offer of Judgment and continued to litigate the case, Midland could still be awarded its reasonable costs if Plaintiff was not awarded more than $10,001.00 at some later stage—regardless of the amount of attorneys' fees and costs incurred at that point. *See* [Dkt. 44]. However, the tradeoff of this approach is that Midland must pay all reasonable costs and attorney's fees on the action for the accepted offer of judgment, including fees and costs associated with any motion for attorney's fees. *See Zortman*, 870 F. Supp. 2d at 697; *see also Hernandez*, 279 F.R.D. at 597 (holding that a Rule 68 offer limiting attorney's fees as of the date of the offer provides incomplete relief and noting "[t]he Court finds that complete relief under the FDCPA includes attorney's fees expended after the receipt of a Rule 68 offer.").

Midland's counsel appear to support the notion that time spent in litigating a fee dispute should be compensable—in addition to any fees incurred prior to a judgment being entered—as they advocated for such a position recently. *See* Chester Decl. ¶¶ 38, 39, Exs. G, H. In fee litigation in the case of *Ricketson v. Advantage Collection Professionals, LLC*, 21-cv-2541-WMW-ECW, after the Court granted the defendant's motion for attorneys' fees pursuant to 28 U.S.C. § 1927, the defendant's

counsel (the same counsel for Midland in this case) collectively billed approximately 19.9 hours on their supplemental fee motion and supporting materials, and an additional 1.8 hours in their reply memorandum and requested that the Court order the opposing counsel to pay for those hours incurred. *See* Chester Decl. ¶¶ 38, 39, Exs. G, H.

Here, Plaintiff accepted Midland's Offer of Judgment and attempted to negotiate compensable fees and costs with Midland thereafter. *See* Peterson Decl. ¶ 7, Ex. C. Plaintiff offered to settle Plaintiff's attorneys' fees for less than what Plaintiff actually incurred in the case. *See* Peterson Decl. ¶¶ 7, 9, Exs. C, D; *see* Chester Decl. ¶ 10, Ex. B. However, Midland refused Plaintiff's initial demand and did not provide an actual dollar value response. Peterson Decl. ¶ 7, Ex. C. Plaintiff renewed her initial demand two more times in an effort to open negotiations back up. *Id.* Plaintiff had already incurred additional attorneys' fees, including fees related to the drafting of this present motion, but Plaintiff sought to exhaust opportunities to resolve the matter short of filing it with the Court. *See* Peterson Decl. ¶ 9, Ex. D; Chester Decl. ¶ 10, Ex. B. However, pressed against the clock, with no response from Midland, Plaintiff was left with no choice but to pursue this fee motion and request an award from the Court.

## IV. Proportionality is not a Part of the Court's Analysis in Determining Reasonable Fees

Plaintiff anticipates that Midland may argue that the size of Plaintiff's recovery, $10,001.00 should be considered in determining what is a "reasonable" attorney fee award. However, the amount of attorneys' fees awarded pursuant to statute is not required to be proportionate to the amount of damages recovered. To the contrary, a trial court may abuse its discretion if it applies an impermissible "proportionality" standard to the fee award.

The U.S. Supreme Court has previously considered the question of proportionality in attorney fee awards and held:

> We reject the proposition that fee awards under section [42 U.S.C.] 1988 should necessarily be proportionate to the amount of damages a civil rights plaintiff actually recovers.

*City of Riverside v. Rivera*, 477 U.S. 561, 574 (1986). The Court went on to state:

> A rule of proportionality would make it difficult, if not impossible, for individuals with meritorious civil rights claims but relatively small potential damages to obtain redress from the courts. This is totally inconsistent with Congress' purpose in enacting section 1988.

*Id* at 578. In the context of the FCRA, the Fourth Circuit stated:

> Proportionality of attorneys' fees to the amount recovered is not required in every action brought pursuant to the FCRA. Since there will rarely be extensive damages in an FCRA action, requiring that attorney's fees be proportionate to the amount recovered would discourage vigorous enforcement of the Act.

*Yoyay v. City of Alexandria Employees Credit Union, Inc.*, 827 F.2d 967, 974 (4th Cir. 1987).

A nominal recovery—as compared to the attorney's fees requested—is simply not an issue in the case at hand. In fact, by recovering $10,001.00 in damages, the Plaintiff has gone beyond a recovery of "nominal" damages and exceeded the maximum possible statutory damages under the FDCPA or FCRA ten times over. *See Zagorski*, 128 F.3d 1164 (7th Cir. 1997) (trial court's denial of attorney fees, after Plaintiff's recovery of $100.00 statutory damages, constituted an abuse of discretion).

Nonetheless, Courts have encountered many examples of fee awards disproportionate to damage awards. *See City of Riverside v. Rivera*, 477 U.S. 561 (1986) ($245,456.25 in attorney fees, $33,350.00 in damages); *Duval v. Midwest Auto City, Inc.*, 578 F.2d 721, 726 (8th Cir. 1978) (Federal Odometer case, over $14,000 attorney fees, $3,000 in damages); *Building Service Local 47*, 46 F.3d 1392 (6th Cir. 1995) (ERISA case, $70,185.95 in attorney fees, $25,598.71 in damages); *Northwest Women's Center v. McMonagh*, 889 F.2d 466 (3rd Cir. 1989) (RICO case, over $60,000.00 in attorney fees, $2,661.00 damages); *Perez v. Perkiss*, 742 F. Supp. 883 (D. Del. 1990) (FDCPA case, $10,110 in attorney fees, $1,200 damages). Indeed, the District of Minnesota found that an attorney fees and costs award of $44,655.29 was reasonable in an FDCPA case where the Plaintiff's

statutory recovery was $1,000.00. *Armstrong,* No. CIV. 00-2287MJD/SRN, 2002 WL 31050583, at *3. Judge Davis held:

> The Court finds that Plaintiff's attorneys' fees and costs [of $44,655.29] are reasonably proportional. While they far exceed the [$1,000] statutory damages award in the present case, Plaintiff did not choose to create this disparity.

*Id.*

The issue before this Court is whether or not Plaintiff's counsel should be fairly and adequately compensated for their time in litigating this case. Defendants who offer judgment with fees and costs associated with the action must stand ready to accept the fee requests and awards that will inevitably be produced as a result.

## V. Counsel Was Exposed to Financial Risk by Taking this Case

Plaintiff's counsel took this case on a contingent fee basis, exposing themselves to significant risk, advancing the costs of litigation without any guarantee of eventually prevailing. *See In re Xcel*, 364 F.Supp.2d 980, 994 (D. Minn. 2005) ("Courts have recognized that the risk of receiving little or no recovery is a major factor in awarding attorney fees."); Peterson Decl. ¶ 17; Chester Decl. ¶ 9. This case was undertaken with no assurance of a favorable outcome. *See In Re Xcel*, 364 F.Supp.2d at 994-95 (risk is an important factor because trial and judicial review are unpredictable and positive results are not guaranteed); *Yarrington*, 697 F.Supp.2d at 1062-63 (D. Minn. 2010) (significant risk because "no assurance of a favorable outcome"); *Khoday*, 2016 WL 1637039,

*9 (same). Thus, this factor also weighs in favor of the fee requested by counsel. Plaintiff respectfully requests this Court find that significant risks were undertaken by Plaintiff's counsel and that such risks support the reasonableness of Plaintiff's attorney fee and cost award.

## VI. Plaintiff's Attorneys have Exercised Sound Discretion in Writing-Off Appropriate Amounts of Time Prior to this Application for Fees

Plaintiff's attorneys have reduced billing for certain tasks solely attributable to other Defendants in the present case. *See* Peterson Decl. ¶ 19; Chester Decl. ¶ 24. The time and billing records attached to the motion papers illustrate the only time that Plaintiff's counsel are requesting payment for. *See* Peterson Decl., ¶ 20; Chester Decl. ¶¶ 23, 24. However, in an effort to ensure Plaintiff's counsel captured any additional time that may have been missed, Plaintiff's counsels' initial demand for attorneys' fees included a 10% discount on the total fee amount sought. Peterson Decl. ¶ 7, Ex. C. After not receiving a dollar value counteroffer from Midland, and despite incurring additional attorneys' fees, Plaintiff renewed her initial demand again on October 28, 2022 and requested a response by November 2, 2022. Peterson Decl. ¶ 7, Ex. C. Plaintiff again did not receive a counteroffer from Midland and once more renewed the initial demand with a response due by November 15, 2022 at 4:00 PM. Plaintiff's November 14, 2022 renewed offer of $34,764.40 (inclusive of fees and costs) represented a discount of nearly 35% from the amount of attorneys' fees incurred by Plaintiff by the

November 15, 2022 deadline (approximately $53,000.00). Plaintiff attempted to resolve the present attorneys' fees dispute well short of the actual amount of attorneys' fees incurred by Plaintiff, yet Midland ignored Plaintiff's requests.

## VII.    Plaintiff is Entitled to Costs

Plaintiff is seeking $32.50 in costs from the service of process fee incurred by Plaintiff. *See* Peterson Decl. ¶ 21, Ex. G. Plaintiff sought concurrence on the issue of payment of costs, and Defendant agreed to pay Plaintiff costs in the amount of $32.50. *See* Peterson Decl. ¶ 7, Ex. C. As such, Plaintiff requests an award of costs in the amount of $32.50.

<u>**CONCLUSION**</u>

For the present motion, Plaintiff requests a total of $45,068.58 in attorneys' fees and $32.50 in costs. This request is comprised of all work performed on this matter attributable to Midland as of the date of this filing—including fees for the time in preparing the present motion for attorneys' fees—with a 15% discount applied. Should Plaintiff's counsel have to undertake additional work in pursuing this request for attorneys' fees, the undersigned respectfully requests compensation for that time as well and will identify it in any reply brief.

Based upon the reasons explained above, and the lodestar calculation, Plaintiff's attorneys' fees and costs should be awarded to Plaintiff in the total amount

of $44,101.08. Plaintiff reserves the right to seek additional attorneys' fees (if any) incurred as a result of further litigation on this fee motion through a reply brief.

Dated: November 15, 2022        Respectfully Submitted,

        KAZEROUNI LAW GROUP, APC

        /s/ Anthony P. Chester
        Anthony P. Chester (#0396929)
        8400 Normandale Lake Blvd., Suite 920
        Bloomington, MN 55437
        Phone: 952-225-5333
        Email: tony@kazlg.com
        *Attorneys for Plaintiff*

        PETERSON LEGAL, PLLC

        /s/ Ryan D. Peterson
        Ryan D. Peterson (#0389607)
        6600 France Avenue, Suite 602
        Edina, MN 55435
        (612) 367-6568
        ryan@peterson.legal
        ATTORNEY FOR PLAINTIFF