UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

BECKY BERSCHEID,

                  Plaintiff,

v.

EXPERIAN INFORMATION SOLUTIONS,
INC. and MIDLAND CREDIT
MANAGEMENT, INC.,

                  Defendants.

Civil No. 22-086 (JRT/LIB)

**ORDER ON PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS**

Anthony P. Chester, **CHESTER LAW PLLC,** 8400 Normandale Lake Boulevard, Suite 920, Bloomington, MN 55437; Ryan D. Peterson, **PETERSON LEGAL, PLLC,** 6600 France Avenue, Suite 602, Edina, MN 55435; for Plaintiff.

Chelsea Bollman and Henry Zurn, **JONES DAY**, 90 South Seventh Street, Suite 4950, Minneapolis, MN 55402, Christopher Adam Hall, **JONES DAY**, 77 West Wacker Drive, Suite 3500, Chicago, IL 60601, for Defendant Experian Information Solutions, Inc.

Michael A. Klutho and Patrick D. Newman, **BASSFORD REMELE**, 100 South Fifth Street, Suite 1500, Minneapolis, MN 55402, for Defendant Midland Credit Management, Inc.

Defendant Midland Credit Management, Inc. ("Midland") sued Plaintiff Becky Berscheid in state conciliation court for a credit account it allegedly purchased, and the conciliation court judge found that Midland failed to show that it owned the account and dismissed its claim with prejudice. However, Midland continued to furnish nationwide credit bureaus with information that Berscheid owed it money. Accordingly, Berscheid

sent a dispute to Defendant Experian Information Solutions, Inc. ("Experian") to correct the false information. Experian did not correct the false information, so Berscheid brought this action against Experian and Midland.

Midland gave Berscheid an offer of judgment ("OOJ") pursuant to Federal Rule of Civil Procedure 68, which Berscheid accepted. The OOJ provided judgment in favor of Berscheid against Midland, plus costs and attorney's fees. The parties failed to agree upon a reasonable amount of attorney's fees and costs. Accordingly, Berscheid has now moved the Court to grant her a total of $50,000.00 in fees and $32.50 costs, which Midland argues is unreasonable. After considering the reasonableness of the attorneys' hourly rates, expended hours, and the additional time incurred briefing the present motion, the Court will award Berscheid $43,283.00 in fees and $32.50 in costs.

## BACKGROUND

Midland sued Berscheid in state conciliation court for a credit account that Midland allegedly purchased. (Am. Compl. ¶ 2, Feb. 11, 2022, Docket No. 7.) At the state conciliation court, the judge found that Midland failed to show that it actually owned the account. (*Id.*) The judge therefore dismissed Midland's action with prejudice. (*Id.*) Thereafter, Midland allegedly continued to furnish nationwide credit bureaus, including Experian, with the false information that Berscheid still owed it money. (*Id.*) Berscheid disputed the false information, but Experian failed to correct her credit report. (*Id.*)

Accordingly, Berscheid brought the present action against Experian in state trial court, which Experian removed to this Court pursuant to 28 U.S.C. § 1441. (Notice of Removal, Jan. 14, 2022, Docket No. 1.) Berscheid then amended her complaint to add Midland and another credit bureau, TransUnion, LLC ("TransUnion"), as defendants. (*See generally* Am. Compl.) She claims violation of the Fair Debt Collection Practices Act and the Fair Credit Reporting Act. (*Id.*) TransUnion settled with Berscheid, but the claims against Experian and Midland remained. (*See* Notice of Settlement, Mar. 30, 2022, Docket No. 23.)

Early on in this litigation, Midland attempted to resolve this case. It solicited a settlement demand from Berscheid's counsel on March 23, 2022. (Decl. Patrick D. Newman ("Newman Decl.") ¶ 2, Nov. 29, 2022, Docket No. 54.) Berscheid's counsel never tendered a settlement demand. (*Id.* ¶ 3.) Approximately one month later, on April 21, 2022, Midland served Berscheid its first Rule 68 offer of judgment ("OOJ"). (*Id.* ¶ 4.) This OOJ provided that judgment would be entered in favor of Berscheid in the amount of $1,001.00. (*Id.*, Ex. B, Nov. 29, 2022, Docket No. 54.-2.) Berscheid did not accept. (Newman Decl. ¶ 4.)

According to Midland, Berscheid's counsel then started a series of unnecessary discovery fights. Berscheid's counsel contested entry of the District of Minnesota's model protective order, proposing changes to various confidentiality designation provisions. (*See* Defs.' Mem. Supp. Joint Mot. Entry of Protective Order at 3, Aug. 25, 2022, Docket

No. 30.) The Magistrate Judge ultimately entered a protective order that incorporated some, but not all, of Berscheid's proposed changes. (Protective Order, Oct. 13, 2022, Docket No. 42.) Berscheid also served two letters on Midland concerning its deficient responses to Berscheid's requests for production and interrogatories. (Newman Decl. ¶¶ 5, 6.) Midland ultimately produced supplemental responses. (*Id.* ¶¶ 7, 8.)

Midland served Berscheid a second OOJ on August 25, 2022. (*See* Pl.'s Notice of Acceptance of Def. Midland's Rule 68 Offer of Judgment, Ex. ("OOJ"), Oct. 28, 2022, Docket No. 44-1.) The OOJ provided that judgment would be entered in favor of Berscheid on her claims against Midland in the amount of $10,001.00. (*Id.* ¶ 1.) The OOJ also indicated that Midland would be liable for Berscheid's "reasonable attorneys' fees and costs." (*Id.* ¶ 2.)

Berscheid accepted Midland's second OOJ on September 8, 2022, and the parties began negotiating the attorney's fees award to avoid Court involvement. (*See* Decl. Ryan D. Peterson ("Peterson Decl."), Ex. C, Nov. 15, 2022, Docket No. 49.) Midland requested Berscheid's counsel produce its fee records. (*Id.* at 7-8.) Berscheid's counsel agreed to produce its fee records if Midland's counsel also produced its records. (*Id.*) Midland's counsel refused. (*Id.* at 6-7.) Midland also never provided a dollar value it would agree to. (*See id.* at 4, 6.) In an attempt to resolve the issue, Berscheid's counsel ultimately produced its fee records. (*Id.* at 2.) Midland never responded meaningfully to Berscheid's production of records. (*Id.*) In the middle of these negotiations, Midland filed the Rule

68 acceptance and judgment was entered accordingly. (Pl.'s Notice of Acceptance of Def. Midland's Rule 68 Offer of Judgment, Oct. 28, 2022, Docket No. 44; J., Nov. 1, 2022, Docket No. 45.)

Needing Court intervention on the attorney's fees issue, Berscheid filed this motion for fees and costs. (Pl.'s Mot. Attorneys' Fees and Costs Against Def. Midland, Nov. 15, 2022, Docket No. 46.) Berscheid asks for $45,068.58 in attorneys' fees and $32.50 for costs incurred. (*Id.* at 2.) This amount of attorney fees includes an across-the-board 15% reduction in fees to account for any cumulative efforts or inefficiencies. (Decl. Anthony Chester ("Chester Decl.") ¶ 30, Nov. 15, 2022, Docket No. 48; Peterson Decl. ¶ 26.) The total attorney fee time incurred by Berscheid's counsel, multiplied by their respective rates, in fact amounts to $53,039.50. (Peterson Decl. ¶ 9, Ex. D; Chester Decl. ¶ 23.) In their reply memorandum, Berscheid's counsel requests an additional $4,931.42 for fees incurred through briefing this motion, which represents an approximately 20% reduction from the $6,168.50 actually incurred. (Pl.'s Reply Mem. at 18, Dec. 14, 2022, Docket No. 57; 2nd Decl. Ryan D. Peterson ¶¶ 7–8, Dec. 14, 2022, Docket No. 58.) Thus, Berscheid's counsel now requests a total of $50,000.00 in fees and $32.50 in costs.

Midland does not contest the $32.50 in costs but argues that $21,899.25 is a more reasonable fee award given its early attempts to settle the case, counsel's inefficiency and "overlawyering," and counsel's unwarranted discovery disputes that would not have been

billed to a client.  (Def.'s Mem. Opp. Pl.'s Mot. at 1, 3 n.2, 31, Nov. 29, 2022, Docket No. 53.)

**DISCUSSION**

**I.   LEGAL STANDARD**

The party seeking an award must provide evidence to support the reasonableness of the fees, both as to the hourly rate and the hours worked and should "exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary."  *Hensley v. Eckerhart*, 461 U.S. 424, 433-34 (1983); *see also Wheeler v. Mo. Highway & Transp. Com'n*, 348 F.3d 744, 754 (8th Cir. 2003).  A district court has substantial discretion when determining the reasonableness of attorney's fees.  *Hensley*, 461 U.S. at 437; *Jarrett v. ERC Props., Inc.*, 211 F.3d 1078, 1084–85 (8th Cir. 2000).

"Where attorney fees are appropriate, courts typically use the 'lodestar' method for calculating a reasonable award."  *Paris Sch. Dist. v. Harter*, 894 F.3d 885, 889 (8th Cir. 2018).  "The lodestar is calculated by multiplying the number of hours reasonably expended by the reasonable hourly rates."  *Id*. (internal quotation and citation omitted).  The reasonable rate must be "in line with [the] prevailing [rate] in the community for similar services by lawyers of reasonably comparable skill, experience and reputation."  *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984).  The party seeking an attorneys' fees award has the burden to establish entitlement to an award with documentation that addresses the nature of the work and the appropriateness of the hourly rates and hours

-6-

expended. *See Fish v. St. Cloud State Univ.*, 295 F.3d 849, 851 (8th Cir. 2002) (citing *Hensley*, 461 U.S. at 437).

## II.  ANALYSIS

Prevailing plaintiffs in Fair Credit Reporting Act and Fair Debt Collection Practices Act actions are entitled to an award of costs and reasonable attorney's fees. *See* 15 U.S.C. § 1692k(a)(3); 15 U.S.C. § 1681n(a)(3); 15 U.S.C. § 1681o(a)(2). In determining the reasonableness of attorney's fees, the Supreme Court has instructed courts to consider:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Hensley*, 461 U.S. at 429–30 n.3.[1] Here, Midland challenges the reasonableness of Berscheid's requested attorney's fees on several grounds. First, it argues that the Twin Cities market does not support the demanded hourly rates. Second, it urges the Court to exclude billed hours that were inefficient, unreasonable, and unnecessary in this

---

[1] Though the Supreme Court applied these twelve factors to the Civil Rights Attorney's Fees Awards Act in *Hensley*, courts have found them instructive in determining reasonable attorney's fees under the Fair Credit Reporting Act and Fair Debt Collection Practices Act. *E.g.*, *Wiley v. Portfolio Recovery Assocs., LLC*, 594 F. Supp. 3d 1127, 1145 (D. Minn. 2022).

litigation. Lastly, it argues that Berscheid's requested award of attorney's fees is unreasonable in light of Berscheid's success in this action. The Court will address each of these arguments individually.

### A. Reasonableness of Hourly Rates

First, the Court must consider if the hourly rates charged by Berscheid's counsel, Ryan Peterson and Anthony Chester, were reasonable. Mr. Peterson's current hourly rate is $365. (Peterson Decl. ¶ 11, Ex. D.) Mr. Chester's hourly rate is $395. (Chester Decl. ¶ 12.) Paralegals also helped with the case, with an hourly rate of $150.[2] (*See* Peterson Decl., Ex. D, at 33.) Midland urges the Court to reduce Peterson's hourly rate to $325 per hour and Chester's rate to $300 per hour.

In determining whether an attorney's hourly rate is reasonable, the Eighth Circuit dictates courts consider market rates and ensure that requested rates are in line with those prevailing in the community for "similar services by lawyers of reasonably comparable skill, experience, and reputation." *McDonald v. Armontrout*, 860 F.2d 1456, 1458–59 (8th Cir. 1988) (citing *Blum v. Stenson*, 465 U.S. 886, 895–96 (1984)). Courts give considerable attention to the attorney's individual characteristics. *Id.*

In recent history, the District of Minnesota has typically awarded attorney's fees ranging from $275 per hour to over $500 per hour for consumer litigation attorneys in

---

[2] Midland does not challenge the reasonableness of the paralegal's hourly rate, and the Court concludes that such rate is reasonable.

Fair Debt Collection Practices Act cases.[3] In 2017, the District of Minnesota acknowledged that the median hourly rate for consumer law attorneys in Minnesota for 2015 to 2016 was $350.  *Kuntz v. Messerli & Kramer P.A.*, No. 16-2676, 2017 WL 3332222, at *3 (D. Minn. Aug. 4, 2017).  Taking inflation to account, the median hourly rates for consumer law attorneys would now equal approximately $431.[4]

Mr. Peterson has represented hundreds of individuals in consumer law and similar matters since 2013.  (Peterson Decl. ¶ 12.)  Over 90% of his practice is devoted to representing individuals in consumer law litigation or debt collection litigation such as this case.  (*Id.* ¶ 13.)  The Minnesota Court of Appeals considered what is an appropriate hourly rate for Mr. Peterson in 2019 and awarded fees at the rate of $350 per hour.  *Bulle v. Brown*, No. A18-20589 (Minn. Ct. App. June 3, 2019).  Considering Mr. Peterson's experience, the average market rate for similar attorneys, and inflation since the Minnesota Court of Appeals decision in 2019, the Court finds Mr. Peterson's hourly rate of $365 to be reasonable.

---

[3] *See e.g.*, *Hashi v. Law Offices of David M. Katz P.C.*, No. 20-2443, 2021 U.S. Dist. LEXIS 66624, at *3–4 (D. Minn. Apr. 6, 2021) (awarding $550 per hour); *Price v. Midland Funding LLC*, No. 18-509, 2018 WL 5259291, at *5 (D. Minn. Oct. 22, 2018) (awarding $400 per hour); *Nathanson v. Diversified Adjustment Serv., Inc.*, No. 18-3102, 2019 WL 4387960, at *4 (D. Minn. Sept. 13, 2019) (collecting cases).

[4] This estimate was calculated using the Bureau of Labor Statistics' CPI Inflation Calculator to determine how much buying power $350 in December 2016 would have in November 2022, when this motion was filed.  *See CPI Inflation Calculator*, U.S. Bureau of Lab. Stats., https://www.bls.gov/data/inflation_calculator.htm.

Mr. Chester has worked in consumer protection law since 2015.  (Chester Decl. ¶ 7, Ex. A.)  He has led extensive lectures on the credit and debit issues, including recently presenting a Continuing Legal Education course focused on the Fair Credit Reporting Act and the Fair Debt Collections Practice Act.  (*Id.* at 2.)  He regularly litigates cases similar to this action and has represented over 900 consumer clients in individual consumer law matters since 2015.  (Chester Decl. ¶ 14.)  The majority of his practice deals with the Fair Credit Reporting Act.  (*Id.* ¶ 15.)  Mr. Chester submitted declarations from several attorneys that state that he can "certainly ask for and expect to receive at minimum $395.00 per hour for his professional time and efforts on behalf of Plaintiffs in individual consumer cases."  (*E.g.*, Chester Decl., Ex. D, ¶ 10.)

Midland urges the Court to reduce Mr. Chester's hourly rate to $300.  Midland points to a District of Minnesota decision from 2018 that found Mr. Chester's reasonable hourly rate to be $275.  *See Bell v. Am. Accounts & Advisers, Inc.*, No. 18-2474, 2018 WL 6718573, at *4.  The Court based its decision on Mr. Chester's years of experience at the time, evidence that he needed to consult with several attorneys on the matter, and the simplicity of the case.  *Id.* at *3–*4.

However, the Court finds that many of the reasons the District of Minnesota previously reduced Mr. Chester's hourly rate to $275 are no longer applicable.  Since *Bell* was decided in 2018, Mr. Chester has further developed his practice and his specialization in consumer protection law.  (*See* Chester Decl., Ex. A.)  He now has several more years'

experience under his belt, as well as skills and expertise in this particular field of law. Further, this case is more complicated than *Bell* as it involves multiple defendants and a removal from state court. Though Mr. Peterson has more years' experience than Mr. Chester, Mr. Chester has similarly developed a specialization in this field of law. The Court also finds it instructive that Midland's own attorney's hourly rate is higher than that which Mr. Chester is requesting here. (*See* Chester Decl., Ex. G, ¶ 9.) Though $275 is too low given Mr. Chester's professional development since *Bell*, his requested $395 hourly rate is still unreasonably high. The Court finds that $365 per hour—the same rate as Mr. Peterson—to be reasonable.

### B.     Reasonableness of Hours Expended

Having determined reasonable hourly rates for the attorneys, the Court must now consider if the hours expended were also reasonable. "A district court 'need not, and indeed should not,' scrutinize each billing entry of an attorney who is seeking a fees award, because the 'essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection.'" *Ricketson v. Advantage Collection Professionals, LLC*, No. 21-2541, 2022 WL 3701442, at *4 (D. Minn. Aug. 26, 2022) (quoting *Fox v. Vice*, 563 U.S. 826, 838 (2011)).

Mr. Chester expended 71 hours litigating this matter, and Mr. Peterson and his paralegal each expended 68.1 and 3.6 hours, respectively. (Chester Decl. ¶ 23; Peterson ¶ Decl. 18.) The Court will refrain from going line by line through Mr. Chester and Mr. Peterson's fees reports. Instead, the Court will analyze reasonableness in broader

strokes. The parties' arguments pertain to five categories of hours expended: (1) general "overlawyering" and internal communications, (2) challenging the protective order, (3) discovery disputes, (4) obtaining fees, and (5) administrative tasks. The Court will address each individually.

### 1. Overlawyering and Internal Communications

First, Midland argues that this case was generally "overlawyered" and that hours should be reduced for time spent "doubled up" in drafting, as well as time billed for communications between Mr. Chester, Mr. Peterson, and their staff. While there is no per se rule prohibiting a litigant from having more than one attorney work on his case, "overlawyering" may be subject to a reduction in fees by the trial court. *Kline v. City of Kansas City, Mo., Fire Dep't*, 245 F.3d 707, 709 (8th Cir. 2001); *see also A.J. by L.B. v. Kierst*, 56 F.3d 849, 864 (8th Cir. 1995) (allowing a court to reduce attorney hours and fees "for inefficiency or duplication of services in cases where more than one attorney is used"). The Court is conscious of counsel's experience in this field of law, which "should enable them to efficiently litigate" the claims. *Young v. Diversified Consultants, Inc.*, 554 F. Supp. 2d 954, 957 (D. Minn. 2008).

Midland characterizes this case as one that did not require two lawyers with such extensive expertise in this area of law. But the Eighth Circuit has recognized that the use of more than one attorney in multiple party litigation such as this is "both desirable and common." *Kierst*, 56 F.3d at 863. A prevailing party's award of attorney's fees should take all attorneys' contribution into consideration to the extent "that the time reported

does not reflect duplication of effort or work that would be performed by nonlawyers." *Id.* at 863–64 (quoting *Reynolds v. Coomey*, 567 F.2d 1166, 1167 (1st Cir. 1978)). The Court finds that it was not inherently unreasonable to have two attorneys staff this case. In fact, that both Experian and Midland are each represented by two attorneys suggests this is not a "one-lawyer-case."

The Court agrees that some communications between Mr. Peterson, Mr. Chester, and their staff were likely inefficient. Mr. Peterson and Mr. Chester seek compensation for more than 23 hours of such communications. Because internal meetings are "not always the model of efficiency," courts have required attorneys seeking reimbursement for internal meetings to "identify explicitly the subject matter of their discussions so that we may assess whether the amount of time recorded was 'reasonably expended.'" *Tchemkou v. Mukasey*, 517 F.3d 506, 512 (7th Cir. 2008); *see also Spuhler v. State Collection Servs., Inc.*, No. 16-1149, 2019 WL 2183803, at *5 (E.D. Wis. May 21, 2019) (reducing attorney's vague or duplicative inter-office communications when they did not identify the subject matter of their discussions in a Fair Debt Collections Practice Act case). Mr. Chester and Mr. Peterson barely—but sufficiently—identified the subject of their internal communications. (*E.g.,* Chester Decl., Ex. B, at 9 ("Call with Ryan – RE: R.68 and next steps on case.").)

Moreover, Berscheid's counsel has made an across-the-board 15% reduction in fees to account for any inefficiencies. This reduction sufficiently resolves the

-13-

inefficiencies inherent to involving multiple lawyers.[5]  Therefore, the Court declines to further reduce the requested fees for internal communications or based on general "overlawyering" of this case.

### 2. Protective Order

Next, Midland argues that Berscheid's counsel's fees should be reduced as they pertain to the parties' protective order dispute.  Midland provides no explanation for why the time spent on the protective order was unreasonable.  Rather, Midland argues that the time counsel spent opposing the protective order was "patently unreasonable," as evidenced by the fact that the Court largely rejected Berscheid's proposed changes to the Court's model protective order.  (Midland's Mem. Opp. Mot. at 23.)

However, the Court finds much of the time spent challenging the protective order to be reasonable.  Berscheid presented a well-reasoned challenge to Midland's motion for entry of the Court's model protective order.  (*See generally* Pl's Mem. Opp. Defs.' Mot. Entry Protective Order, Sept. 8, 2022, Docket No. 40.)  That Berscheid ultimately did not obtain all of the protective order provisions she sought is not grounds to conclude that such dispute was "patently unreasonable."  *Cf. Miller v. Bd. of Regents of Univ. Minn.*, 402

---

[5] *See Sheppard v. United States Dept. Just.*, No. 4:17-1037, 2022 WL 245480, at *9 (W.D. Mo. Jan. 25, 2022) (finding a reduction of 5% to be appropriate "to account for any cumulative efforts resulting from the involvement of multiple attorneys"); *M.B. v. Tidball*, No. 2:17-4102, 2020 WL 1666159, at *15 (W.D. Mo. Apr. 3, 2020) (finding a 10% reduction to be appropriate given "inefficiencies inherent in cases that are staffed by multiple attorneys from multiple organizations"), *aff'd sub nom M.B. by Eggemeyer v. Tidball*, 18 F.4th 565 (8th Cir. 2021).

F. Supp. 3d 568, 594 (D. Minn. Sept. 6, 2019) ("The fact that Miller did not prevail on every motion and every argument does not detract from her victory, nor does it mean that time spent litigating unsuccessful motions was unreasonable.").

That being said, Peterson billed 7.5 hours and Chester billed 13.5 hours contesting the protective order. Given the attorneys' experience in this area of law and having reviewed the relevant record, the Court finds this amount of time unreasonable. The Court will therefore reduce each attorney's time spent litigating the protective order by 66%, which correlates to a 5.0 hour reduction for Peterson and a 9.0 hour reduction for Chester.

### 3. Discovery Dispute

Similarly, Midland urges the Court to reduce the award of attorney's fees by 50% for time spent on the discovery letters and contesting Midland's discovery response. Midland argues that such reduction is "warranted to account for the unsubstantiated nature of a number of the issues plaintiff's counsel chose to challenge." (Midland's Mem. Opp. Mot. at 23.) This assertion is unsupported by the record before the Court.

Berscheid served Midland with requests for production and interrogatories. Midland's response was deficient. In fact, the record suggests that Midland initially failed to produce any documents at all. (*See* Newman Decl., Ex. D, at 1.) Berscheid was well within her right to challenge Midland's responses to her discovery requests, and yet it still took Midland multiple months to correct the deficiency. Midland could have made this litigation faster and cheaper by responding appropriately to the discovery requests from

the beginning. But it did not. Time that Berscheid's counsel spent litigating this issue is both reasonable and fully compensable.

### 4. Obtaining Fees

Next, Berscheid's counsel requests attorney's fees for hours expended obtaining fees. The District of Minnesota has noted that plaintiffs entitled to attorney's fees under the Fair Debt Collections Practices Act may recover fees accumulated after a Rule 68 offer, including fees "associated with preparing a fee petition and resulting litigation." *Zortman v. J.C. Christensen & Assocs., Inc.*, 870 F. Supp. 2d 694, 697 (D. Minn. 2012). Here, Berscheid's counsel expended hours negotiating attorney's fees with Midland's counsel, to no avail. Midland refused to provide a specific dollar value they would be willing to agree to. Berscheid was then required to file this motion to obtain attorney's fees. These actions are certainly compensable.

Midland argues that Berscheid's counsel prolonged the case by refusing to provide their fee records during the negotiations. Accordingly, they request a 100% reduction of the time counsel billed resisting Midland's request for their supporting fee records, as well as a 66% reduction of the time counsel billed preparing the fee petition papers. The Court finds such a drastic reduction unsupported by the record. Production of fee records is not a prerequisite for bringing a motion for attorney's fees. *Cf. Bell*, 2018 WL 6718573, at *5 (considering whether a motion for fees would have been "rendered unnecessary by the production of the billing statement"). And even after Berscheid did eventually produce counsel's fee records, Midland failed to respond meaningfully. The Court finds

that counsel expended reasonable hours negotiating and litigating the attorney's fee award. Further, the Court finds Berscheid's additional request for $4,931.42 for fees expended through briefing this motion both reasonable and appropriate here.

### 5. Administrative Work

Lastly, Berscheid's counsel requested fees for hours spent doing administrative work. The District of Minnesota has repeatedly indicated that routine clerical tasks cannot be accounted for at an attorney's, or even a paralegal's, billing rate. *See Rosen v. Wentworth*, 13 F. Supp. 3d 944, 952–53 (D. Minn. 2014) (collecting cases). *See also* See *Murray v. Collections Acquisitions, LLC,* No. 8:11-301, 2012 WL 2577211, at *2 (D. Neb. July 3, 2012) (holding "time spent filing through CM/ECF, preparing and reviewing documents, and calendaring dates" is clerical work that is not compensable under the FDCPA). Here, Berscheid's counsel's fee records include a handful of time entries reflecting administrative work. A 100% reduction of these fees is appropriate. The Court will therefore reduce Mr. Peterson's requested hours by 1.3, Mr. Peterson's paralegal's hours by 0.4, and Mr. Chester's hours by 1.5.

### C. Plaintiff's Success

Lastly, the Court considers Berscheid's success in this litigation. As the Supreme Court has indicated, "where a plaintiff has obtained excellent results, [their] attorney should recover a fully compensatory fee, which typically "will encompass all hours reasonably expended in the litigation, and indeed in some cases of exceptional success an enhancement award may be justified." *Hensley*, 461 U.S. at 435. The Court considers

a party to be "prevailing" in litigation for attorney's fees purposes where they succeed "on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Id.* at 433. When a plaintiff has obtained excellent results, the Court should not reduce an attorney's fees award "simply because the plaintiff failed to prevail on every contention raised in the lawsuit." *Id.* at 435. "The most important factor in determining what is a reasonable fee is the magnitude of the plaintiff's success in the case as a whole." *Jenkins by Jenkins v. State of Mo.*, 127 F.3d 709, 716 (8th Cir. 1997).

Here, Berscheid's counsel obtained a judgment against Midland for $10,001. (Pl.'s Notice of Acceptance of Def. Midland's Rule 68 Offer of Judgment.) As Berscheid points out, this is more than ten times the maximum statutory damages she is entitled to under the Fair Debt Collections Practices Act or the Fair Credit Reporting Act. 15 U.S.C. § 1692k(a)(2)(A); 15 U.S.C. § 1681n(a)(1)(A). It is also ten times that which Midland initially offered Berscheid in its first Rule 68 OOJ. The Court is satisfied that Berscheid obtained success in this action.

Midland urges the Court to reduce the attorney's fees award because this was not a "total victory." It points to emails between Midland's counsel and Berscheid's counsel, wherein Berscheid accepted the $10,001 offer but noted that they believed "this case has substantially more value than what is being offered" by Midland. (Newman Decl., Ex. H at 20.) But this one-off email does not detract from the fact that Berscheid was successful in this action. She sought to recover damages for violations of the Fair Debt Collections

-18-

Practices Act and the Fair Credit Reporting Act, and she ultimately received ten times the damages provided under those Acts. The Court therefore declines to reduce her attorney's fees award on this basis.

## CONCLUSION

The Court has considered the reasonableness of counsel's hourly rates and hours expended. An hourly rate of $365 is reasonable for both Mr. Chester and Mr. Peterson. Much of the time expended in this litigation was also reasonable. However, the Court will reduce the compensable hours expended litigating the protective order by 66% and it will reduce the time spent on administrative tasks by 100%.

Taking these reductions into account, the Court finds Mr. Peterson expended 61.8 compensable hours, Mr. Peterson's paralegal expended 3.2 compensable hours, and Mr. Chester expended 60.5 compensable hours. Considering the paralegal's $150 hourly rate, a rate of $365 per hour for both Mr. Chester and Mr. Peterson, and counsel's 15% across-the-board reduction, Berscheid's counsel is entitled to $38,351.58. The Court will also award an additional $4,931.42 for fees incurred litigating this motion, for a total of $43,283.00 in fees plus $32.50 in costs.

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Motion for Attorneys' Fees and Costs Against Defendant Midland Credit Management, Inc. [Docket No. 46] is **GRANTED in part and DENIED in part** as follows:

    a. Plaintiff shall recover from Defendant Midland Credit Management, Inc. attorney's fees in the amount of $43,283.00.

    b. Plaintiff shall recover from Defendant Midland Credit Management, Inc. costs in the amount of $32.50.

DATED: June 1, 2023  
at Minneapolis, Minnesota.

JOHN R. TUNHEIM  
United States District Judge