UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

BECKY BERSCHEID,

                         Plaintiff,

v.

EXPERIAN INFORMATION SOLUTIONS, INC.,

                         Defendant.

Civil No. 22-086 (JRT/LIB)

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Anthony P. Chester, **CHESTER LAW PLLC**, 8400 Normandale Lake Boulevard, Suite 920, Bloomington, MN 55437; Ryan D. Peterson, **PETERSON LEGAL, PLLC**, 6600 France Avenue, Suite 602, Edina, MN 5545, for Plaintiff.

Chelsea Bollman, **JONES DAY**, 90 South Seventh Street, Suite 4950, Minneapolis, MN 55402; Christopher Adam Hall, **JONES DAY**, 110 North Wacker, Suite 4800, Chicago, IL 60606, for Defendant.

Plaintiff Becky Berscheid brought this action against Defendant Experian Information Solutions, Inc. ("Experian"), alleging violations of the Fair Credit Reporting Act ("FCRA") after Experian failed to correct information on her credit report regarding a debt she allegedly owed to Midland Credit Management, Inc. ("Midland"). Midland sought to collect the debt from Berscheid in state conciliation court, but the state court dismissed Midland's claim with prejudice after finding that Midland failed to show that it owned the account. Experian continued to include the debt on Berscheid's credit report despite her multiple disputes to correct the information. Experian and Berscheid now

cross move for summary judgment. Because Berscheid has failed to meet her prima facie burden for her claim under 15 U.S.C.§ 1681e(b), the Court will grant Experian's motion for summary judgment on that claim. Because genuine issues of material fact remain on the question of the accuracy of the Midland Account, the reasonableness of Experian's reinvestigations, and damages for the 15 U.S.C. § 1681i claim, the Court will deny both parties' motions for summary judgment on that claim. Accordingly, the § 1681i claim may proceed.

## BACKGROUND

### I. FACTS

#### A. Experian's Reporting and Reinvestigation Procedures

Experian, a credit reporting agency ("CRA"),[1] obtains its consumer credit information from furnishers. (Am. Compl. ¶ 25, Feb. 11, 2022, Docket No. 7; Decl. Christina Hamilton ("Hamilton Decl.") ¶ 8, June 1, 2023, Docket No. 132.) Before Experian accepts consumer credit data from a furnisher, the furnisher signs a contract to certify that it will report accurate information to Experian. (Hamilton Decl. ¶¶ 8, 9, Ex. 1 at 2.) Experian also reviews consumer credit data before processing and periodically reviews its furnishers to ensure their reliability. (*Id.* ¶¶ 10, 11.) When a consumer disputes something in their credit report, Experian will conduct a reinvestigation and either modify

---

[1] Experian is undisputedly a credit reporting agency under the FCRA.

the account or contact the furnisher if more information is needed.  (*Id.* ¶¶ 13, 14, Ex. 2 ("Dispute Guide") at 7.)

For disputes involving a civil action against a creditor, Experian will delete the disputed information if the consumer provides a valid court document showing that the "consumer either prevailed (won) in the action, obtained a judgment in his/her favor, or the case was dismissed for any reason." (Dispute Guide at 11; Hamilton Decl. ¶ 27.)  A court document is valid if it meets certain requirements, including Experian's proof document authentication guidelines.  (Dispute Guide at 11.)  Under the guidelines, a document must have consistent font size throughout, have no spelling or grammatical errors, and be complete if a public record.  (Hamilton Decl. ¶ 17, Ex. 3 at 4.)  If not all criteria are met, Experian will send an industry-standard Automated Consumer Dispute Verification form ("ACDV") to the furnisher, along with relevant documents that the consumer provided regarding the dispute.  (*Id.* ¶¶ 17–18.)  After reviewing the ACDV, a furnisher must certify the information's accuracy or else update the disputed information. (*Id.* ¶¶ 19–20.)  If the furnisher does not respond to the ACDV within 30 days, Experian will delete the disputed information from the consumer's credit report.  (*Id.* ¶ 19; Dispute Guide at 10.)

After conducting a reinvestigation, Experian sends a summary of the reinvestigation to the consumer.  (Hamilton Decl. ¶ 21.)  If a consumer disputes

information that is no longer appearing on a credit report, it is considered a frivolous dispute. (*Id.* ¶ 22.)

### B. State Court Action by Midland

Midland brought an action in state court to collect a debt Berscheid owed and failed to pay, which Credit One Bank, N.A. ("Credit One") originally owned.[2] (Decl. Chelsea A. Bollman ("Bollman Decl.") ¶¶ 3–5, Ex. 2 at 31, Ex. 3 at 2, Ex. 4 at 2, June 1, 2023, Docket No. 129.)  At a conciliation court hearing, the state court found that Midland could not establish proper chain of title to prove that it owned the debt, so therefore dismissed the action with prejudice in a form order.  (*Id.* ¶ 6, Ex. 5 at 2–3; *id.* ¶ 7, Ex. 6 at 2.)  Because Midland continued to furnish to nationwide credit bureaus, including Experian, that Berscheid still owed it money, Experian continued to include the Midland Account on Berscheid's credit report.  (Hamilton Decl. ¶ 45, Ex. 18 at 6.)

### C. Berscheid's Disputes with Experian

After discovering the Midland Account was still appearing on her report, Berscheid mailed her first dispute letter to Experian on December 22, 2020.  (Decl. Ryan D. Peterson ("Peterson Decl.") ¶ 4, Ex. B, June 1, 2023, Docket No. 143; Hamilton Decl. ¶ 26, Ex. 5.) Berscheid explained that she did not owe Midland money because the state court judgment dismissed Midland's claim with prejudice, and she attached a copy of the first

---

[2] In her declaration, Berscheid states that she did not trust Midland and was not sure she owed it a debt, but the evidence suggests Berscheid owed the debt addressed in the state court judgment to somebody, so the Court will operate under that assumption.

page of the judgment as proof. (Peterson Decl. ¶ 4, Ex. B at 2, 5; Hamilton Decl. ¶ 26, Ex. 5 at 2, 5.) The bottom left corner of the first page of the state court judgment states, "Page 1 of 3." (Peterson Decl. ¶ 4, Ex. B at 5; Hamilton Decl. ¶ 26, Ex. 5 at 5.) Experian sent an ACDV to Midland to verify the Midland Account. (Hamilton Decl. ¶ 28.) Thereafter, Midland verified that the Midland Account was accurate, notwithstanding the state court dismissal. (*Id.* ¶ 30, Ex. 7 at 2.) Accordingly, Experian emailed the results of the reinvestigation to Berscheid's email address, which Berscheid checked "daily" in 2021. (*Id.* ¶¶ 28, 32, 43, Ex. 9 at 2; Bollman Decl. ¶ 2, Ex. 1 ("Berscheid Dep.") at 17.)

Because the Midland Account continued to appear on her report, Berscheid mailed a second dispute letter to Experian on March 30, 2021, again explaining that she did not owe Midland money and attaching the first two pages of the state court judgment as proof. (Decl. Anthony P. Chester ("Chester Decl.") ¶¶ 4–7, Exs. E–H, June 1, 2023, Docket No. 145; Hamilton Decl. ¶ 34, Ex. 10 at 2–4; Peterson Decl. ¶ 5, Ex. C at 2–4.) Experian sent another ACDV to Midland to verify the account. (Hamilton Decl. ¶ 33.) After receiving no response from Midland for 30 days, Experian deleted the Midland Account from Berscheid's report. (*Id.*) Experian emailed Berscheid on May 3, 2021 to notify her that the Midland Account had been deleted. (*Id.* ¶¶ 33, 36, Ex. 12 at 2.)

Apparently mistaken that the Midland Account was still appearing on her report, Berscheid sent two more disputes to Experian on July 28 and October 4, 2021. (Hamilton Decl. ¶¶ 37–38, 40–41, Ex. 13 at 2, 6–8, Ex. 15 at 2–3, 7–9.) Because the Midland Account

was no longer appearing on the report, Experian sent communications to Berscheid stating the same on August 20 and October 19, 2021.  (*Id.* ¶¶ 37, 39, 40, 42, Exs. 14, 16.)  Berscheid claims she did not discover that the Midland Account had been removed from her report until November 2021.  (Decl. Becky Berscheid ("Berscheid Decl.") ¶ 20, June 22, 2023, Docket No. 151.)  Berscheid subsequently brought this action, alleging that Experian's conduct caused her emotional distress.

### D. Berscheid's Alleged Harms

Berscheid claims that she has felt angry, stressed, and anxious that Experian was including the Midland Account on her credit report despite the state court judgment.  (*Id.* ¶¶ 10, 13.)  When she gets stressed, Berscheid "get[s] bad headaches almost like migraines" and "eventually ha[s] to go to the bathroom," which she attributes to her Crohn's/colitis diagnosis.  (*Id.* ¶ 15.)  Berscheid claims that her physical symptoms "started to get really bad" because of the credit reporting, causing her to miss work and lose sleep.  (*Id.* ¶¶ 17–18.)  She describes the difficulties with Experian as "one of the worst and longest lasting over the last few years."  (*Id.* ¶ 21.)

To support her emotional distress claim, Berscheid relies on her own testimony and that of two corroborating witnesses: her partner of 27 years and a coworker.  (*See* Bollman Decl. ¶¶ 13–14, Ex. 12 ("Schlangen Dep.") at 6, 17, Ex. 13 ("Meinz Dep.").)  Berscheid's partner confirmed Berscheid's Crohn's/colitis diagnosis and symptoms as well as her "rage" and "anger" when talking about Experian's reporting, but he has not described a specific time frame wherein these symptoms occurred, nor does he

specifically attribute the symptoms to Experian's conduct. (Schlangen Dep. at 7, 13, 17.) Similarly, Berscheid's coworker confirmed Berscheid's "really bad" digestive problems, anxiety, and stress, and that generally the last few years have taken a "toll" on Berscheid. (Meinz Dep. at 7–8.) However, the coworker also made clear that she knows very little about Berscheid's issues with Experian. (*Id.* at 6.).

Berscheid presented no evidence that she was medically treated for her symptoms. (Bollman Decl. ¶¶ 9–10, Ex. 8 at 7–8, Ex. 9 at 2–3.) She has not produced expert testimony regarding her emotional harm. She has also not produced credit denials, adverse action notices, or other evidence that Experian's reporting caused her pecuniary harm. (*See id.* ¶ 10, Ex. 9 at 2–3.)

## II. PROCEDURAL HISTORY

After Berscheid initiated this action against Experian in state court, Experian removed the case to this Court pursuant to 28 U.S.C. § 1441. (Notice of Removal, Jan. 14, 2022, Docket No. 1.) Berscheid amended her Complaint to add Midland and TransUnion, LLC ("TransUnion"), as defendants. (*See generally* Am. Compl.) She settled with TransUnion and accepted an offer of judgment from Midland. (*See* Notice of Settlement, Mar. 30, 2022, Docket No. 23; Notice of Acceptance of Offer of J., Oct. 28, 2022, Docket No. 44.) Berscheid's claims against Experian remain.

Berscheid brings claims against Experian under 15 U.S.C. § 1681n and § 1681o of the FCRA for negligently and willfully failing to employ reasonable procedures to assure maximum possible accuracy in her credit report in violation of 15 U.S.C. § 1681e(b) and

failing to conduct a reasonable reinvestigation into her disputes in violation of 15 U.S.C. § 1681i. (Am. Compl. ¶¶ 72–73, 75–76.) She seeks actual, statutory, and punitive damages. (*Id.* ¶ 81.) Experian moves for summary judgment to dismiss all claims against it. (Def.'s Mot. Summ. J., June 1, 2023, Docket No. 126.) Berscheid moves for partial summary judgment on her reasonable reinvestigation claim. (Pl.'s Mot. Summ. J., June 1, 2023, Docket No. 138.)

## DISCUSSION

### I. STANDARD OF REVIEW

Summary judgment is appropriate when there are no genuine issues of material fact, and the moving party can demonstrate that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the case, and a dispute is genuine if the evidence is such that it could lead a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A court considering a motion for summary judgment must view the facts in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences to be drawn from those facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The nonmoving party may not rest on mere allegations or denials but must show, through the presentation of admissible evidence, that specific facts exist creating a genuine issue for trial. *Anderson*, 477 U.S. at 256 (discussing Fed. R. Civ. P. 56(e)). "The mere existence of a scintilla of evidence in support of the plaintiff's

position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252.

## II.    ANALYSIS

The FCRA aims to "ensure fair and accurate credit reporting, promote efficiency in the banking system and protect consumer privacy." *Poehl v. Countrywide Home Loans, Inc.*, 528 F.3d 1093, 1096 (8th Cir. 2008) (quoting *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007)).  The Act requires CRAs to follow certain procedures in furnishing consumer credit data and in reinvestigating consumer disputes of information included in credit reports.  15 U.S.C. §§ 1681e(b), 1681i.  Berscheid's Complaint alleges that Experian failed to employ reasonable procedures and failed to reasonably reinvestigate after she disputed the Midland Account.

### A.    Reasonableness of Experian's Procedures

Berscheid alleges that Experian violated the FCRA by negligently and willfully failing to employ reasonable procedures to assure maximum possible accuracy in her credit report in violation of 15 U.S.C. § 1681e(b). Only Experian moves for summary judgment on this claim.  To survive summary judgment, Berscheid must show that: "(1) Experian failed to follow reasonable procedures intended to assure the accuracy of its reports, (2) reported inaccurate credit information about her, (3) she suffered harm and (4) Experian's failure to follow reasonable procedures was the cause of her harm." *Paul v. Experian Info. Sols., Inc.*, 793 F. Supp. 2d 1098, 1101 (D. Minn. 2011) (citing cases).

The FCRA does not hold CRAs strictly liable for inaccuracies in credit reports, so even if the Midland Account was inaccurate to include on Berscheid's credit report, that alone is insufficient. *Hauser v. Equifax, Inc.*, 602 F.2d 811, 814–15 (8th Cir. 1979). Instead, the inaccuracy must have resulted from the CRA's failure to "follow reasonable procedures to assure maximum possible accuracy." *Paul*, 793 F. Supp. 2d at 1101; 15 U.S.C. § 1681e(b). A CRA is not liable "where an item of information, received from a source that it reasonably believes is reputable, turns out to be inaccurate unless the agency receives notice of systemic problems with its procedures." *Rydholm v. Equifax Info. Servs. LLC*, 44 F.4th 1105, 1108 (8th Cir. 2022) (quoting *Sarver v. Experian Info. Sols.*, 390 F.3d 969, 972 (7th Cir. 2004)).

Berscheid claims that Experian failed to employ reasonable procedures to ensure accuracy in her credit report but fails to provide sufficient evidence to survive summary judgment. Because Experian believed Midland was a reputable source, Berscheid needed to present information that Experian had notice of systemic problems regarding Midland's reliability, which she did not. *Id.* at 1109. Her "bare legal conclusions" are insufficient as a matter of law. *Id.* Without providing any indication that Midland was an unreliable source of credit information before she contested the Midland Account, Berscheid is unable to satisfy the first element of her § 1681e(b) claim. Even if Berscheid could meet the other elements, she cannot meet her prima facie burden. Accordingly, the Court will grant Experian's motion for summary judgment on this claim.

### B.     Reasonableness of Experian's Reinvestigations

Berscheid alleges that Experian violated 15 U.S.C. § 1681i by negligently and willfully failing to conduct a reasonable reinvestigation into her first and second disputes.[3] Experian and Berscheid cross move for summary judgment on this claim, although Berscheid reserves for trial a determination of her damages.

When a consumer disputes information included in their credit report, the FCRA requires CRAs to "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file" within 30 days of receiving the dispute.  15 U.S.C. § 1681i(a)(1)(A); *see also Reed v. Experian Info. Sols., Inc.*, 321 F. Supp. 2d 1109, 1113 (D. Minn. 2004) (citing 15 U.S.C. § 1681i(a)(1)(A)).  For her § 1681i claim, Berscheid must demonstrate that: (1) Experian reported inaccurate information in her report that she disputed, (2) Experian failed to reasonably reinvestigate the information or failed to confirm, correct, or delete it, and (3) she suffered harm as a result. *Reed*, 321 F. Supp. 2d at 1113–14.

#### 1.    Accuracy of the Midland Account

The parties dispute whether reporting the Midland Account on Berscheid's credit report was technically accurate notwithstanding the state court judgment.  The state

---

[3] Berscheid clarified at oral argument that she is not seeking liability for Experian's reinvestigations of her third and fourth disputes, since Experian had deleted the Midland Account from her credit report when she sent the disputes.

-11-

court judgment concluded that Midland could not prove that Berscheid owed the debt, making the debt legally uncollectible. Whether a debt that is technically accurate but uncollectible should be excluded from a credit report is an open question.

Experian argues that reporting the Midland Account on Berscheid's credit report was technically accurate, notwithstanding the state court judgment, because Berscheid ran up a debt to Credit One, Midland eventually obtained that debt, and Berscheid never paid Credit One or Midland for the debt.

The Eighth Circuit has yet to resolve the issue,[4] but several circuit courts have found that a technically accurate but misleading report can qualify as inaccurate under the FCRA. *See, e.g.*, *Beseke v. Equifax Info. Servs. LLC*, 420 F. Supp. 3d 885, 891, 901 (D. Minn. 2019) (listing circuit cases). "[E]ven if the information is technically correct, it may nonetheless be inaccurate if, through omission, it 'create[s] a materially misleading impression.'" *Seamans v. Temple Univ.*, 744 F.3d 853, 865 (3d Cir. 2014) (quoting *Saunders v. Branch Banking & T. Co. of Va.*, 526 F.3d 142, 148 (4th Cir. 2008)). A misleading report is inaccurate when "it is misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions." *Sepulvado v. CSC Credit Servs., Inc.*, 158 F.3d 890, 895 (5th Cir. 1998); *see also Dalton v. Cap. Associated Indus., Inc.*, 257 F.3d 409, 415 (4th Cir. 2001) (quoting same). Whether technically accurate information is so

---

[4] *See Taylor v. Tenant Tracker, Inc.*, 710 F.3d 824, 827 n.2 (8th Cir. 2013).

misleading to constitute an actionable inaccuracy under the FCRA is a fact question best left for the jury.  *See Seamans*, 744 F.3d at 865.

Here, the technical accuracy of the debt does not resolve the issue.  Because reporting that Berscheid owes a debt to Midland notwithstanding the state court judgment could create the misimpression that Berscheid still owes a collectible debt to Midland, the question becomes whether this omission is materially misleading.  At a bare minimum, Experian could have clarified its report by noting that the debt was legally uncollectible.  Failing to include that caveat could negatively impact credit decisions, and thus be materially misleading to anyone reading Berscheid's report.  Because a reasonable juror could conclude that reporting the Midland Account was materially misleading, the Court finds that Berscheid has raised a genuine issue of material fact on the question of accuracy best resolved by a jury.

Moreover, the exception to inaccuracies that require legal analysis does not make summary judgment appropriate.  *See Chuluunbat v. Experian Info. Sols., Inc.*, 4 F.4th 562, 569 (7th Cir. 2021) (explaining that CRAs are responsible for factual determinations, not legal ones, and that "a legal question may [] be resolved as a matter of fact if a tribunal … has adjudicated the matter").  The Seventh Circuit has recently concluded that a CRA is not exempt from "taking notice of a previously resolved legal dispute" because that is a factual not a legal determination.  *Chaitoff v. Experian Info. Sols., Inc.*, 79 F.4th 800, 812–15 (7th Cir. 2023).  Under this theory, the existence of the state court judgment that

Berscheid attached to her disputes was a factual question that Experian could have resolved by including it on Berscheid's report. Thus, the Court declines to grant summary judgment on the question of accuracy.

### 2. Experian's Reinvestigations

The reasonableness of Experian's reinvestigations after Berscheid's disputes is also contested. After a consumer disputes information in a credit report, the FCRA requires CRAs to reasonably reinvestigate and confirm, correct, or delete the disputed information. 15 U.S.C. § 1681i(a)(1)(A). In doing so, the CRA must promptly notify the furnisher of the disputed information and provide them with "all relevant information regarding the dispute" that it receives from the consumer. *Id.* § 1681i(a)(2)(A)–(B). Courts have found that the ACDV process to verify disputed information is reasonable. *Edeh v. Equifax Info. Servs., LLC*, 974 F. Supp. 2d 1220, 1237 (D. Minn. 2013), *aff'd*, 564 F. App'x 878 (8th Cir. 2014).

The parties' arguments question the reasonableness of Experian sending an ACDV to Midland to verify the accuracy of the Midland Account. Berscheid would like the Court to conclude that because the state court judgment dismissed Midland's claim to collect the debt with prejudice, the judgment was sufficiently clear such that confirming with Midland was unreasonable. However, the state court judgment did not explicitly

discharge the debt to Midland,[5] nor did it allegedly meet Experian's proof authentication guidelines.

The Court finds that whether it was reasonable for Experian to question the meaning and authenticity of the state court judgment raises a genuine issue of material fact.  On the one hand, the state court judgment is signed by a judge and court deputy, has court filing stamps, and clearly dismisses Midland's claim to collect the debt from Berscheid, all suggesting authenticity.  The slightly different font sizes in various sections of the form order do not necessarily raise questions about its validity.  Indeed, the Court wonders what more Experian needed to verify the Midland Account.

However, on the other hand a reasonable juror could conclude that it was reasonable for Experian to question the authenticity of the state court judgment.  The inconsistent font sizes raise some doubt, but the more damaging evidence is Berscheid's omission of the state court judgment pages.  Experian's proof authentication guidelines state that an incomplete official document raises suspicion about the document's authenticity, such that Experian's policy for immediately deleting disputed information that concerns a civil action against a creditor no longer applies.  Therefore, a genuine issue of material fact remains as to whether Experian reasonably reinvestigated Berscheid's

---

[5] Experian renews its argument that it need not conduct legal analysis, however, as addressed above, the existence of the state court judgment was a factual question that Experian could have resolved by including it on Berscheid's credit report.  *Chaitoff v. Experian Info. Sols., Inc.*, 79 F.4th 800, 812–15 (7th Cir. 2023).

disputes by sending the ACDVs to Midland to verify the accuracy of the Midland Account. As such, neither party is entitled to summary judgment on this issue.

### 3. Actual Damages

Consumers are entitled to recover actual damages caused by a furnisher's violation of the FCRA, whether the violation was negligent or willful. 15 U.S.C. §§ 1681n(a)(1)(A), 1681o(a)(1). Actual damages under the FCRA include pecuniary harm, such as denial of credit opportunities or higher interest rates, as well as emotional distress damages. *Edeh*, 974 F. Supp. 2d at 1242; *Taylor v. Tenant Tracker, Inc.*, 710 F.3d 824, 828 (8th Cir. 2013). Berscheid has not presented evidence that she suffered loss of credit opportunities or similar damages because of Experian's reporting. Instead, Berscheid's damages are based entirely on her emotional distress.

"Mental pain and anxiety can constitute actual damages" under the FCRA, "but emotional distress damages must be supported by competent evidence of 'genuine injury,' which 'may be evidenced by one's conduct and observed by others.'" *Taylor*, 710 F.3d at 828 (quoting *Carey v. Piphus*, 435 U.S. 247, 264 n.20 (1978)). A plaintiff's sole testimony may be sufficient to establish emotional distress under the FCRA, but the testimony must show a "concrete" and "genuine injury." *Edeh*, 974 F. Supp. 2d at 1244; *see also Sherman v. Sheffield Fin., LLC*, 627 F. Supp. 3d 1000, 1017 (D. Minn. 2022) (quoting same). Whether a plaintiff suffered a physical injury or received medical treatment because of the emotional distress are factors that courts will consider in the analysis, though they are not dispositive. *Taylor*, 710 F.3d at 829; *Sherman*, 627 F. Supp.

3d at 1017. Courts have denied emotional distress damages under the FCRA where the consumer plaintiff "suffered no physical injury, [] was not medically treated for any psychological or emotional injury, and no other witness corroborated any outward manifestation of emotional distress." *Peterson v. Experian Info. Sols., Inc.*, 44 F.4th 1124, 1128 (8th Cir. 2022) (citations omitted); *accord Taylor*, 710 F.3d at 829.

In presenting her emotional distress damages, Berscheid relies on her own testimony and declaration as well as the testimonies of her partner and coworker. The testimonies generally describe that Berscheid has experienced worsening anxiety and depression and flare-ups of her Crohn's/colitis symptoms since she learned that Experian was including the Midland Account on her credit report despite the state court judgment. Though the partner and coworker have provided limited details as to whether Experian was the cause of Berscheid's harm, they can attest to the nature and extent of her emotional distress over the years. The Court finds this evidence of Berscheid's emotional distress is "competent evidence of genuine injury" sufficient to create a genuine issue of material fact as to the question of damages. *Taylor*, 710 F.3d at 828; *see also Hrebal v. Seterus, Inc.*, 598 B.R. 252, 273 (D. Minn. 2019). Even though Berscheid has not presented medical expert testimony or evidence that she sought medical treatment, she presented enough information to survive Experian's motion for summary judgment. *Sherman*, 627 F. Supp. 3d at 1017. Although the evidence is not overwhelming, the Court finds that a reasonable juror could credit the testimony and find that Berscheid suffered emotional

distress at the hand of Experian. Thus, whether Berscheid suffered actual damages is a triable fact question for the jury. The Court declines to grant summary judgment on this issue.

### 4. Willfulness

Berscheid argues that Experian willfully violated 15 U.S.C. § 1681i. Willfulness is not an element of a FCRA claim, but Berscheid may be entitled to statutory or punitive damages if Experian's violation was willful. 15 U.S.C. § 1681n(a)(1)–(2). She can also recover statutory and punitive damages even if she did not suffer actual damages, so long as the violation was willful. *Bakker v. McKinnon*, 152 F.3d 1007, 1013 (8th Cir. 1998) ("Actual damages are not a statutory prerequisite to an award of punitive damages under the [FCRA]." (quotation omitted) (alteration in original)). To establish willful noncompliance with the FCRA's reinvestigation requirements, Berscheid must demonstrate that Experian "knowingly and intentionally committed an act in conscious disregard for the rights of others," though she "need not show malice or evil motive." *Id.* (quoting Cushman *v. Trans Union Corp.*, 115 F.3d 220, 226 (3$^{d}$ Cir.1997)). Reckless conduct involves "an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 68 (2007) (citations and internal quotation marks omitted).

Berscheid's willfulness argument stems mostly from Experian's policy to delete accounts associated with debts that have been subject to dismissal with prejudice in state court. However, at most, Experian's actions could be attributed to negligence, not

willfulness. Sending ACDVs to furnishers to verify the accuracy of credit information, as Experian did, does not automatically constitute a willful violation. *See Edeh*, 974 F. Supp. 2d at 1245–47. Berscheid also claims Experian acted willfully by not allowing its dispute operators to utilize basic research tools and contact outside sources to reinvestigate consumer disputes. While Experian could do more to enhance its reinvestigation procedures, not doing more does not constitute a willful violation of the FCRA. FCRA does not require CRAs to have the best possible reinvestigation procedures but rather that they be reasonable. Berscheid has not presented sufficient evidence of a knowing and intentional violation of the FCRA and is therefore unable to establish willfulness as a matter of law. As a result, the Court will grant summary judgment to Experian on the question of willfulness.

## CONCLUSION

Because Berscheid has not presented evidence that Experian had notice of systemic problems regarding Midland's reliability as a furnisher, her § 1681e(b) cannot survive summary judgment. The Court will grant summary judgment to Experian on that claim. Because Berscheid is unable to establish willfulness as a matter of law for her § 1681i claim, the Court will grant summary judgment to Experian on the question of willfulness. However, there remain genuine disputes of material fact on the question of accuracy, reasonableness, and damages for the § 1681i claim, so the Court will reserve those questions for the jury. Accordingly, the Court will deny the parties' motions for

summary judgment on the § 1681i claim. The case may proceed on the question of whether Experian negligently violated 15 U.S.C. § 1681i.

### ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED that**:

1. Defendant's Motion for Summary Judgment [Docket No. 126] is **GRANTED in part and DENIED in part** as follows:

   a. The Motion is **GRANTED** as to Defendant's liability for alleged negligent and willful violations of 15 U.S.C. § 1681e(b);

   b. The Motion is **GRANTED** as to Defendant's liability for alleged willful violations of 15 U.S.C. § 1681i; and

   c. The Motion is **DENIED** as to Defendant's liability for alleged negligent violations of 15 U.S.C. § 1681i.

2. Plaintiff's Motion for Summary Judgment [Docket No. 138] is **DENIED**.

DATED: March 4, 2024  
at Minneapolis, Minnesota.

JOHN R. TUNHEIM  
United States District Judge